ANGELINE STANLEY, Respondent, *v.* NATIONAL UNION BANK et al., Appellants.

A married woman, as a necessary incident to her right to acquire property and possess it, independent of the control or interference of her husband, is competent, although living with her husband, to secure and maintain legal possession of property acquired by her, free and independent of the rights of persons claiming an interest therein through or under her husband.

S., the owner of a dairy farm, having become insolvent, executed a chattel mortgage upon the personal property on the farm to plaintiff, his wife, and other creditors jointly, which was delivered to plaintiff at the time of its execution and duly filed. A receiver was subsequently appointed of the property of S. in supplementary proceedings, who took possession of the farm with the consent of S., executed a lease thereof to plaintiff and delivered the lease and possession of the farm to her. Default having been made in payment of the debts secured by the mortgage, plaintiff, in her own behalf and as agent for the other mortgagees, who ratified her acts, caused the mortgaged chattels to be taken under the mortgage and sold at public auction. Upon such sale she became the purchaser, and thereafter assumed to occupy and carry on the farm and dairy, delivering the milk to a cheese factory in her own name and receiving the proceeds, also that of other produce. She was assisted in the business by her husband. Defendants caused the mortgaged property to be levied upon and taken under execution against S. In an action for the alleged unlawful taking and conversion, *held*, the facts fully justified a finding that there had been an actual and continued change of possession of the property within the meaning of the statute; and the fact that plaintiff's husband was employed as her agent in conducting the business, although competent evidence upon the question of fraudulent intent, was not conclusive.

*Steele* v. *Benham* (84 N. Y. 634) distinguished.

It was claimed that the receiver acquired no right to lease the farm by reason of some defect in his official bond. *Held*, untenable; that he having been, by order of the court, duly vested with title, the lease conveyed the receiver's right of possession and was valid as against all

persons assailing it collaterally; that if the appointment of the receiver was, by reason of irregularities, voidable, the possession of the lessee was justified until the lease was adjudged unlawful at the suit of some person rightfully challenging its validity.

It appeared that in 1869 S., in consideration of money and property of the value of $4,000 transferred to him by his wife's mother, one of the mortgagees, covenanted to support her and her daughter M. during their respective lives. This covenant he performed until M. died in 1879, and he continued to support her mother until the execution of the chattel mortgage. He agreed to secure her $1,000 as damages for the apprehended breach of his covenant because of his failure, and she agreed to receive that sum therefor. This sum was secured by the mortgage. *Held,* that the questions as to whether the sum so agreed upon was reasonable, and as to whether the agreement was made in good faith, were properly submitted to the jury, and that a finding sustaining the transaction was justified.

It appeared that M., a sister of the plaintiff, about five years before the execution of the mortgage loaned to S. $1,000; of this sum he repaid $300, and thereafter paid to M. interest on the balance. She died leaving her mother, plaintiff and two other sisters surviving. No letters of administration were issued, and upon a settlement among the next of kin S. gave to the mother his note for $700, which she afterwards destroyed upon S. promising to pay one-third of the sum to each of her three daughters. The debts to plaintiff and her two sisters mentioned in the mortgage consisted of the balance unpaid. *Held,* that the promise created a legal obligation in favor of the daughters; and that a finding of good faith was justified and was conclusive.

Some years before the execution of the mortgage, and when S. was solvent, he agreed with two minor daughters that they should thereafter take care of and support themselves and be entitled to their time and all their earnings. Moneys earned by them in teaching they loaned to their father to be repaid on demand. These, with a sum earned by one of the daughters in doing housework for her parents under an agreement that she should be paid therefor the same as other servants, were included in the mortgage. *Held,* that the agreement was valid, and the amounts so due constituted a valid indebtedness which S. had a right to secure by the mortgage.

A parent may emancipate an infant child and confer upon it a right to labor for itself and receive the earnings, to acquire property and possess it.

A debtor in possession of his property, and having the right to dispose of it in payment of his debts, may lawfully transfer directly to a creditor any of his property in satisfaction of his debt, or make any other arrangement which would render its appropriation upon the debt certain and secure.

One of the debts secured by the mortgage was in judgment. It was claimed, as matter of law, that as this was a lien upon real estate sufficient to satisfy it, its inclusion in the mortgage could not have been in good faith. *Held*, untenable· that S. had the right to pay or secure the debt with either real or personal property, or to enable a creditor to resort to either; that even if it was his object to enhance the security of other liens on real estate, it was lawful and competent for him so to do, and so long as all of his property was devoted to the payment of just debts, there was no legal presumption of fraud.

(Submitted April 24, 1889; decided June 11, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 1, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts are sufficiently stated in the opinion.

*Hannibal Smith* for appellants. There were no acts done which did away with the necessity of refiling the chattel mortgage to make it good in law; the plaintiff's possession was merely a formal paper one and merely constructive, and was not actual or open. (Laws of 1833, chap. 279; 3 R. S. [7th ed.] 2249; Laws 1873, chap. 501; Laws 1879, chap. 418.) The statute, in order to do away with the necessity of refiling, requires a change of possession to the exclusion of the mortgagor from the control, management, or participation in the management of the mortgaged property. (*Steele* v. *Benham*, 84 N. Y. 634, 640; *Hale* v. *Sweet*, 40 id. 97; *Porter* v. *Parmley*, 52 id. 185; *E'y* v. *Carnley*, 19 id. 496; *Thompson* v. *Van Vechten*, 27 id. 568; *Fraser* v. *Gilbert*, 11 Hun, 634; *Flagg* v. *Pierce*, 58 N. H. 348; Jones on Chat. Mort. § 185; *C. P. P. & M. Co.* v. *Damon*, 48 Hun, 509; *Spotten* v. *Keeler*, 12 N. Y. S. R. 385; *Dutcher* v. *Swartwood*, 15 Hun, 31; *Stimson* v. *Wrigley*, 86 N. Y. 332; *Swiggett* v. *Dodson*, 17 Pac. Rep. 504.) The agreement for the use of the property, impliedly entered into upon the making of the mortgage, followed by the disposition of the

property as shown, with the knowledge and consent of the plaintiff, is inconsistent with the purpose of security, and makes all claims to the property arising from the mortgage in the plaintiff, fraudulent in law. (*Twyne's Case*, 3 Coke, 80½; 1 Smith's L. C. 1; *Potts* v. *Hart*, 99 N. Y. 168; *Southard* v. *Benner*, 72 id. 424; *Smith* v. *Cooper*, 27 Hun, 565; *Q. & N. B. Co.* v. *Hart*, 48 id., 393; *C. P. P. Co.* v. *Damon*, Id. 509; *Sperry* v. *Baldwin*, 46 id. 120; *Edgell* v. *Hart*, 5 Seld. 213; *Gardner* v. *McEwen*, 19 N. Y. 123; *Brackett* v. *Harvey*, 91 id. 214; *Griswold* v. *Sheldon*, 4 id. 581; *Ford* v. *Williams*, 13 id. 577; *Southard* v. *Pickney*, 5 Abb. N. C. 184; *Mittnacht* v. *Kelley*, 3 Abb. Ct. App. Cas. 301; *City Bank* v. *Westbury*, 16 Hun, 458; *Wagner* v. *Jones*, 7 Daly, 375; 77 N. Y. 590; *Robbins* v. *Parker*, 3 Metc. 117; *Peiser* v. *Peticolas*, 50 Tex. 638; 32 Amer. Rep. 621; *Collins* v. *Meyer*, 16 Ohio St. 547; *Freeman* v. *Rawson*, 5 id. 1; *Horton* v. *Williams*, 21 Minn. 187; *Anderson* v. *Patterson*, 25 N. W. Rep. 541; *Wilson* v. *Voight*, 13 Pac. Rep. 726; *Brasher* v. *Christopher*, 15 id. 403.) A good consideration is not sufficient to rebut the presumption of fraud; but the consideration must have been in connection with circumstances to show the mortgage was intended as a valid security, and to have been made in good faith, and to show the absence of intent to defraud. (*Griswold* v. *Sheldon*, 4 N. Y. 581; *Hanford* v. *Artcher*, 4 Hill, 271; *Doane* v. *Eddy*, 16 Wend. 524; *Randall* v. *Cooke*, 17 id. 53; *Randall* v. *Parker*, 3 Sandf. 69; *Smith* v. *Cooper*, 27 Hun, 565; *Fonda* v. *Gross*, 15 Wend. 628; *Stimson* v. *Wrigley*, 86 N. Y. 332; *Gloat* v. *Rees*, 20 Barb. 26; *Dutcher* v. *Swartwood*, 15 Hun, 31; Jones on Chat. Mort. § 338; *Wheeldon* v. *Wilson*, 4 Me. 1; *Hollacher* v. *O'Brien*, 5 Hun, 277; *Marston*, v. *Vultee*, 8 Bosw. 129; *Wood* v. *Lowery*, 17 Wend, 492; 3 R. S. [7th ed.] 2328, § 5.) Where there is no material and pertinent evidence tending to prove good faith in addition to consideration, it is a question of law. (*Coleman* v. *Burr*, 93 N. Y. 31; *Griswold* v. *Sheldon*, 4 id. 581; *Edgell* v. *Hart*, 9 id. 213; *Randall* v. *Parker*, 3 Sandf. 69.) The execution

of the written lease by Baker, as receiver, to the plaintiff, did not confer any rights upon the plaintiff. . (*Bunn* v. *Daly*, 24 Hun, 526; *Tinkey* v. *Langdon*, 13 N.Y.W. D. 384; *Albany City Nat. Bk.* v. *Gaynor*, 67 How. 421; *Petition of Inglehart, Receiver, etc.*, 1 Sheldon, 514; *Scott* v. *Elmore*, 10 Hun, 68; *Chautauqua County Bank* v. *Risley*, 19 N. Y. 369; *Bostwick* v. *Menck*, 40 id. 383; *Du Bois* v. *Cassidy*, 75 id. 298–302; High on Receivers, § 553; Pomeroy's Eq. Juris. § 1331; Code Civ. Pro. §§ 1440, 1451; 2 R. S. part 3, chap. 6, tit. 5, §§ 45, 46, 49, 50, 51, 55, 56.) The receiver in this case acquired no interest in the real estate, not having filed the bond required by law. (*Banks* v. *Potter*, 21 How. 469; *Conger* v. *Sands*, 19 id. 8; *Johnson* v. *Martin*, 1 T. & C. 504; Code Civ. Pro. § 2468; *Harris* v. *Durkee*, 5 Civ. Pro. Rep. 376; R. S. [7th ed.] 2216, 2218, §§ 4, 9, 15, 16; *Du Bois* v. *Cassidy*, 75 N. Y. 298; *Wright* v. *Nostrand*, 94 id. 31; 98 id. 669; *West* v. *Fraser*, 5 Sandf. 565; *Lottimer* v. *Lord*, 4 E. D. Smith, 185; *Wilson* v. *Allen*, 6 Barb. 542; *Morgan* v. *Potter*, 17 Hun, 403; *Tyler* v. *Willis*, 83 Barb. 327; *Waldron* v. *McComb*, 1 Hill, 111; *McComb* v. *Waldron*, 7 Hill, 335; *Ives* v *Davenport*, 3 id. 373; *Burdick* v. *Post*, 12 Barb. 184; Perry on Trusts, § 786 a; *Nicholson* v. *Leavitt*, 6 N. Y. 510; *Porter* v. *Williams*, 9 id. 142; *Wilson* v. *Robertson*, 21 id. 587; *Gates* v. *Andrews*, 37 id. 657.) A sale by a receiver unauthorized by law confers no title upon a purchaser; it is void. (High on Receivers, § 191; *State* v. *Johnson*, 13 Fla. 33; *Hackley* v. *Draper*, 4 T. & C. 614; *Bergen* v. *Carman*, 79 N. Y. 146.)

*John C. McCartin* and *Levi H. Brown* for respondent. If plaintiff had no title to the property in question, then the title was in the receiver, and he had no leviable interest therein. No valid levy could be made without leave of the court. (*Walling* v. *Miller*, 108 N. Y. 173–177; Code of Pro. § 298.) Title was vested in the receiver to the personal property subject to the lien of the mortgage. (*Porter* v. *Williams*, 9 N. Y. 142; *Wing* v. *Disse*, 15 Hun, 190; *Manning* v. *Evans*,

19 id. 500; *Fessenden* v. *Woods*, 3 Bosw. 550.) The plaintiff being in possession of the property under a foreclosure of her mortgage, with the knowledge and consent of the receiver, had the right to maintain an action for its conversion, regardless of who was the owner. (*Cook* v. *Howard*, 13 Johns. 276–284; *Hoyt* v. *Van Alstyne*, 15 Barb. 568; *Hurd* v. *Cook*, 75 N. Y., 454–460.) The mortgagor had a right to make the mortgage, and it was a continuing security. (*Miller* v. *Lockwood*, 32 N. Y. 293; *Brown* v. *Keifer*, 71 id. 610.) The plaintiff had a valid claim against the mortgagor on the promise made by him to a third party for a full and valid consideration to pay her this amount, and had he failed to do so she could maintain an action against him. (*Lawrence* v. *Fox*, 20 N. Y. 268.) The inserting of Babbitt's claim in the mortgage was not only securing a valid debt, but was a proper thing to do under the circumstances; but, even if invalid, it would not in any way affect the rights of the other mortgagees, they being separate claims. (*Smith* v. *Post*, 1 Hun, 516–518.) The question of intent to defraud was purely for the jury. (*S. C., P. Co.* v. *Wing*, 85 N. Y. 421.) All equity of redemption was extinguished by a sale of the property by the mortgagee. (*Bragleman* v. *Daue*, 69 N. Y. 69.) After taking possession under such foreclosure sale she had a right to do with said property as she saw fit. (Thomas on Mort. 445.) The receiver's bond was operative as against parties when acted on by the judge, and no person but the judgment-debtor could avail himself of an irregularity. (*Underwood* v. *Sutliff*, 10 Hun, 453; *Richards* v. *Allen*, 3 E. D. Smith, 399; *Tyler* v. *White*, 33 Barb. 327; *Wright* v. *Nostrand*, 94 N. Y. 31.) After enjoying benefits conferred by the lease plaintiff could not dispute its validity or her liability under it to pay rent. (93 N. Y. 609–618.) The question who was in possession of the farm and personal property was a question of fact to be determined by the jury on the evidence. (*Alexander* v. *Hard*, 64 N. Y. 228; *Martin* v. *Rector*, 101 id. 77; Thomas on Mort. 480; *Tallman* v. *Smith*, 39 Barb. 390; *Bragleman* v. *Dane*, 69 N. Y. 69; *Allen* v. *Cowan*, 23 id. 502, 505, *Por-*

*ter* v. *Parmly*, 52 id. 185, 188; 2 Keyes, 218; 47 N. Y. 423; *Steel* v. *Benham*, 84 id. 634.) The fact that the property was used on the farm up to the time of the foreclosure, and some of the grain and hay fed to the cattle mortgaged, would not render the mortgage fraudulent as against creditors in the absence of proof that it was pursuant to an agreement between the parties. (*Frost* v. *Warren*, 42 N. Y. 204; *Chatham Bk.* v. *O'Brien*, 6 Hun, 231.) This is a question of fact for the jury, and the intent and understanding of the mortgagee is the test of the validity of the mortgage and not that of the mortgagor. (*Stevens* v. *Gage*, 79 N. Y. 102; 2 R. S. 137, § 5.) The other mortgagees, on being notified of the giving of the mortgage, approved of it, and that had the same effect as if they knew of it at or prior to the making. (*Shrader* v. *Barker*, 65 Barb. 608–615; *Brown* v. *Platt*, 8 Bosw. 324–330.) Where parties stand in the relation of husband and wife, parent and child, it is not surprising that their dealings are not kept in a business-like manner as between strangers, and such omission is not sufficient to overcome the account. (*Spencer* v. *Ayrault*, 10 N. Y. 205; 85 id. 421.) The charge for services of the infant daughter was proper. (*Fort* v. *Gooding*, 9 Barb. 371–375; *Canover* v. *Coaker*, 3 id. 115; *Frost* v. *Warren*, 42 N. Y. 204.)

RUGER, Ch. J. The plaintiff sought in this action to recover the value of certain personal property alleged to have been wrongfully taken from her by the defendant and converted to its use. The defendant's answer justified the taking under certain judgments and executions against one O. M. Stanley, upon allegations that the property belonged to the judgment-debtor and had been conveyed by him to the plaintiff, in fraud of the rights of his creditors.

Upon a trial of the issues the jury rendered a verdict for the plaintiff and the judgment entered thereon was affirmed by the General Term.

This appeal is sought to be supported by the claim that certain circumstances, hereinafter referred to, afforded conclu-

sive evidence of a fraudulent intent, and that the judgment should, therefore, be reversed, notwithstanding the verdict of the jury in favor of the plaintiff. The plaintiff made title to the property through an alleged purchase upon an auction sale under a chattel mortgage executed February 7, 1879, by O. M. Stanley to her, she being his wife, to Helen Stanley and Florence Stanley, his daughters, Mrs. Ryder and Mrs Matteson, sisters of his wife, Mary Weaver, his wife's mother, one George Babbitt and Mrs. Membry, to secure the payment, one day after date, of certain debts therein described, owing by him to the several mortgagees, respectively, amounting in the aggregate to upwards of $2,700. This mortgage was duly delivered by the mortgagor, at the time of its execution, to the plaintiff as the assumed agent of the several mortgagees named therein, and was duly filed in the clerk's office of the town where the mortgagor resided on the day of its date. In June, 1879, default having been made in the payment of the debts secured thereby, the mortgagee Babbitt and the plaintiff, in her own behalf and as the agent of the other mortgagees, caused the property to be taken on the mortgage and to be advertised for sale at public auction. On June 11, 1879, upon such sale, the plaintiff, as the highest bidder, became the purchaser of that portion of the property involved in this action. By this sale the interest of the mortgagor in the property was extinguished, and the plaintiff became the owner thereof through the execution of the power of sale created by the mortgage. The purchaser thereby became liable to pay the other mortgagees their proportional share of the purchase-price of the property, and the mortgage debt was paid to the extent of the sum bid for the property. Since the sale the title of the plaintiff to the mortgaged property has been based upon the purchase thereof by her at a public sale, lawfully conducted, and not upon the mortgage.

The action of the plaintiff in selling the property in behalf of the several mortgagees was never disapproved by them, but, on the contrary, has been ratified and approved so far as

brought to their knowledge. After the sale she executed and delivered to each of them, respectively, with the exception of Babbitt and Mrs. Membry, her several promissory notes for their proportionate shares of the proceeds of such sale, and the same were accepted and retained by them. The plaintiff also made payments upon several of the notes so given.

The property in question consisted of cows, horses, wagons, harnesses, lumber, grain and farming utensils used in cultivating and carrying on a dairy farm owned by the mortgagor, and which was continued to be owned and occupied by him until June 10, 1879. Previous to that date, upon proceedings duly had upon a judgment recovered by one Hubbard against him, one E. Collins Baker was duly appointed receiver of all of the property and effects of said Stanley. Upon that day the receiver took possession of the farm with Stanley's consent, and on the same day executed a lease thereof to the plaintiff for the term of one year, and delivered the lease and possession of the farm to her. Subsequent to such lease and sale the plaintiff assumed to occupy and carry on the farm and dairy. The milk produced by the cows, the main product of the farm, was delivered at the cheese factory in her name, and she received the proceeds thereof as well as of other produce of the farm. In all this she was aided and assisted by her husband, and the profits of the business were, to some extent, used in support of the family.

It will also reflect some light upon the questions determined by the jury if we refer to the situation of the judgment-debtor at the time this mortgage was made. Previous to January, 1879, he had for many years apparently been a prosperous farmer, and in the habit of indorsing quite largely for a brother. In January, 1879, the brother became insolvent and failed, and upon investigation by O. M. Stanley of his liabilities at that time he found himself, by reason of his liabilities as indorser, insolvent and unable to meet his obligations. He then owned the property in question and a large amount of real estate comparatively unincumbered. Being unable to pay all his creditors, and threatened with judgments and

executions, he resolved to devote his property to the payment of those claims which he considered most meritorious and deserving of preference by him. He thereupon mortgaged his real estate to borrow money and secure debts, and devoted its proceeds to the debts which he had incurred on behalf of his brother, and gave the chattel mortgage in question to secure the debts mentioned therein. If he honestly owed these debts and gave the mortgage in good faith with the intention of securing their payment, there was no legal reason why he could not do so. The fact that the several mortgagees were members of his family or that the transfer to them of this property would necessarily prevent other creditors from reaching it by execution, presented no legal objection to the validity of such transfer. While the circumstances referred to would naturally call for close scrutiny and criticism, for the purpose of discovering whether any scheme to defraud lurked under the form of the transaction, yet if the transfers were made in good faith for an honest consideration, no rule of law prevented the insolvent debtor from paying one creditor in preference to another, or enabled the unpreferred creditors to take away from those secured a preference honestly received or obtained.

The main contention on the part of the defendant on the trial was that some of the debts included in the mortgage were fictitious and fraudulent. Among others, those of Mary Weaver, his wife; Mrs. Ryder, Mrs. Matteson, and a portion of the debts to the two daughters were alleged to be of that character. If this claim was well founded, it would undoubtedly invalidate to a certain extent the plaintiff's title to the property. A brief history of these claims will dispose of this contention. In 1869 O. M. Stanley, in consideration of money and property of the value of upwards of $4,000, transferred to him by Mary Weaver, covenanted to support her and her daughter Mary Ann Weaver during their respective lives. This covenant he performed until the death of Mary Ann, in 1874, and after that time he supported Mary Weaver until the execution of the mortgage in question. Realizing, when compelled to

surrender his property in payment of his debts, that he would be unable to perform his contract with Mary Weaver, and after consultations with her, he agreed to secure her this sum of $1,000 as damages for the apprehended breach of his contract, and she agreed to receive that sum therefor. The trial court submitted the question to the jury to determine whether that sum was a reasonable amount to insure a comfortable support to Mary Weaver during her life, and whether the agreement to secure it was entered into between the parties in good faith and without intent to defraud the creditors of Stanley. The jury found the good faith and honesty of the transaction, and we think the finding was warranted by the evidence. The creditor here had a legal contract and was lawfully entitled to take precautions to insure its performance. There is no rule of law or ethics which required her to sit idly by and witness the efforts of contending creditors to appropriate the property of her debtor, without an effort to secure her own lawful demand.

The claims of Angeline Stanley, Mrs. Ryder and Mrs. Matteson, the three sisters of Mary A. Weaver, grew out of the following circumstances: Previous to 1874 Mary Ann Weaver received $1,000 as her share of a brother's estate, and loaned that sum to O. M. Stanley. In 1874 Mary Ann died, leaving her mother and three sisters surviving. During her lifetime O. M. Stanley had paid $300 of the $1,000 to her brother George as a gift, at her request, and had paid to Mary Ann Weaver the interest on the balance of the indebtedness. Letters of administration were not issued on Mary Ann's estate, but the next of kin voluntarily settled the same among themselves. In January, 1875, O. M. Stanley gave Mary Weaver, as the next of kin of her daughter's estate, his note for $700, being the balance remaining unpaid upon the loan. During the same year Mary Weaver, desiring to give to her three daughters, Mrs. Stanley, Mrs. Ryder and Mrs. Matteson, the amount of O. M. Stanley's obligation to her upon his promise to pay one-third of such sum to each of her said daughters, destroyed the $700 note, and thereupon he executed and

delivered to Mrs. Ryder and Mrs. Matteson his notes for $250 each, and promised to deliver a similar note to his wife, which, however, he neglected to do until the time the chattel mortgage was executed.   The debts to Mrs. Stanley, Ryder and Matteson, mentioned in the mortgage, consisted of the balances remaining unpaid on their several claims above described. The verdict of the jury has settled the *bona fides* of their several debts.

O. M. Stanley, from the first, treated the sum of $1,000 as a loan to him by Mary Ann Weaver, and during her lifetime repaid $300 of the sum loaned upon her order.   After her death, in 1875, he gave his note for the balance of the loan, as an asset of Mary Ann Weaver's estate, to the person lawfully entitled to it, and that note became a valid obligation against him in the hands of its payee.   This note the payee surrendered to him in consideration of his promise to pay the amount thereof in equal parts to the three daughters of Mrs. Weaver.   This promise created a legal obligation against O. M. Stanley in favor of the three daughters, respectively, and a valuable consideration for the security given for its payment.

There is no foundation in the facts of the case for the appellants' claim that the sum in question could be considered as a gift from Mary Ann Weaver to O. M. Stanley, and there was no basis for the charge in respect thereto requested of the trial court.   O. M. Stanley, long before his embarrassments arose, treated the sum as a loan, and his interpretation of the transaction made it a valid claim against him, and necessarily against all persons claiming through or under him.

We are also of the opinion that the claims of the two daughters, Helen and Florence, were lawful demands and enforceable against the mortgagor.   The evidence in respect to them tended to show that they had received a good education, partially at the expense of their father during their minority, and having arrived at an age when they were qualified and capable of supporting themselves, proposed to engage in the business of school teaching.   It was then agreed

between them, respectively, and their father, that they should thereafter take care of and support themselves, and that they should be entitled to their time and all that they might thereafter earn by their services.    This contract was made in 1874, when the father was supposed to be solvent and able to pay his debts.    From this time forward they were engaged away from home much of the time in the occupation of teachers ; in which service they earned moneys which were loaned to their father under an agreement that he should repay such loans when demanded, with interest thereon.    The larger part of the debts secured to Florence and Helen consisted of such loans.    A portion of the debt to Florence consisted of a sum included as payment for household services rendered by her for her parents under an agreement that she should be paid therefor the same as other servants.    A small portion of these services were rendered before she arrived at her majority. The validity of these debts to a certain extent depends upon the question whether a parent has power to manumit an infant child and vest her with authority to acquire property and possess the same in her own right.    We do not understand that the appellants seriously contest the question that such a contract is valid if made in good faith, and vests the infant with the right to recover payment for services rendered by her and to hold the proceeds as against all persons. Whether admitted or not, we suppose it to be well settled that a parent may emancipate an infant child and confer a right upon it to acquire property and possess it as against all persons whatsoever.    As said by Judge SUTHERLAND in *Shute* v. *Dorr* (5 Wend. 204), " A parent may relinquish his right and authorize his child to labor for himself and receive and appropriate to his own use whatever he may earn." (See, also, *Fort* v. *Gooding*, 9 Barb. 375 ; *Lind* v. *Sullestadt*, 21 Hun, 366.)    No lawful objection, therefore, arises over the legality of the debts included in the mortgage for the benefit of the daughters, provided they were found to have been secured in good faith without intent to defraud creditors.

Neither is any question made but that the debts included

therein for Mrs. Membry and Mr. Babbitt were valid and lawful debts justly owing by the mortgagor. It is claimed, however, that the debt of Babbitt was covered by a judgment in his favor constituting a lien upon real estate sufficient to satisfy the same ; and, therefore, as matter of law, it is argued that its inclusion in the mortgage could not have been made in good faith with an honest intent to secure the debt. We are of the opinion that this argument cannot be supported: At the time this mortgage was given the debtor was in possession of his property, and having the right to dispose of it in payment of his debts as he saw fit, provided he did so in good faith. He could lawfully have transferred to Babbitt directly any of the property included in the mortgage in satisfaction of his debt, or make any other arrangement which should render its appropriation upon the debt certain and secure. This worked no injury to unsecured creditors, for if the debt should be paid from the mortgaged property it would reduce the lien upon other property and expose the surplus thereof to the claims of such creditors. But even if it was the debtor's object to enhance the security of other liens on real estate by paying some of them from the personal property, it was entirely lawful and competent for him to do so. So long as all of the property was devoted to the payment of just debts, it affords no legal presumption of fraud that a creditor was given the right to resort to either of two separate funds to secure payment of his debt.

The question as to whether the debts included in the mortgage were valid liabilities of the mortgagor, and the security therefor taken in good faith without intent to hinder, delay or defraud creditors, having been submitted to the jury under a charge that was quite unexceptionable, its finding thereon is conclusive upon the parties as to the questions of fact involved, and establishes the validity of the mortgage.

It is also contended that upon the facts no such actual and continued change of possession of the property has been proved as obviated the requirement of the statute providing for the refiling of a mortgage to perpetuate its lien.

We think the facts justified a finding of the jury that there had been the change of possession required by the statute. The property having been taken possession of by a bailiff of the mortgagees, and duly advertised and sold at public auction, and the plaintiff having become the purchaser thereof, she became invested with the lawful title thereto as against the creditors of her husband, and effected a valid change of possession, subject only to the obligation to show that the same was made in good faith and without intent to defraud creditors. (§ 5, title 2, chap. 7, part 2, R. S. p. 2328 [7th ed.].) A married woman, under the statute, has the capacity to engage in business for herself, to acquire property and possess it independent of the control or interference therewith by her husband. As a necessary incident of such right she is competent, although living with her husband, to secure and maintain legal possession of property acquired by her, free and independent of the rights of persons claiming an interest therein, through or under the husband. When the sale of this property was made she was in possession of the farm upon which it was situated, under a conveyance thereof from a receiver having lawful possession and legal right to lease it, and when she had purchased the personal property it immediately became subject to her dominion and control as the owner of the real property upon which it was situated and in whose cultivation and enjoyment it was employed. (*Knapp* v. *Smith*, 27 N. Y. 278.)

It is quite impossible to conceive how the plaintiff could maintain the rights conferred upon her by law, without holding that she had the lawful possession of this personal property. (*Rowe* v. *Smith*, 45 N. Y. 232.) The law does not require a family to be broken up or a wife to separate from her husband to enable her to acquire and maintain possession of property lawfully owned by her. Her possession must be such as the circumstances of the case permit and such as she is capable of taking and enjoying; and when she has done all that it is possible for her to do in this respect it is a question of fact to be determined by a jury whether she was, in fact,

in | . . . of the property or not. Here the wife took poss . . . e mortgaged property, advertised it for sale, and . . . public auction; she notoriously became its purc . . . h sale; she acquired from its lawful owner the p . . . the farm on which it was used; she delivered . . . roduced from the cows in her own name at the ch . . . y where it was manufactured, and drew the price . . . refrom and disbursed it as her own property. No ele . . . crecy entered into the transactions, and everything . . . ereto was openly and publicly done under a claim o . . . ht. We have no doubt but that these facts fully ju . . . finding of the jury that there had been an actual . . . ued change of possession of the property mortgag . . . the meaning of the statute.

The c . . . 'eele v. *Benham* (84 N. Y. 634), does not conflict . . . views. In that case no circumstances were shown to . . . the claim of a change of possession. It rested wholly upon the allegation of the assignee of the mortgage, that she had taken possession of the mortgaged property, but it still remained unsold in the mortgagor's possession upon his farm and was devoted to his use. It was quite properly held in that case that no change had been effected, and that the statute required a refiling of the mortgage within a year to perpetuate its lien.

It is also claimed by the appellants that the receiver acquired no right to lease the farm in question by reason of some defect in his official bond. If there was any defect in such bond, of which, upon the evidence, we have some doubt, we do not think the defendants were in a position to raise the question. The receiver had, by order of the court, been duly vested with title to the debtor's property; had, as such, taken possession of his real estate and leased it to a tenant who was put in possession of the property by him. This lease undoubtedly conveyed the receiver's right of possession and was valid as against all persons assailing it collaterally. Even if the appointment of the receiver was, by reason of the irregularities referred to,

voidable, the fact that the lessee had taken possession under a lease from him would justify such possession until the lease was adjudged to be unlawful at the suit of some person rightfully challenging its validity.

The question on the trial was, who was, at the time of the sale of the mortgaged property, in fact, occupying the premises, and the jury has found that the plaintiff was, and this finding, we think, is conclusive. The circumstance that the plaintiff's husband was employed as her agent in conducting the business of cultivating the farm after the property was acquired by her is urged in many forms by the appellants as a reason for reversing the judgment. That such circumstance is competent evidence to show the intent of the parties upon a question of fraud has been adjudged in many cases; but it has also been frequently decided that it afforded no conclusive evidence of a fraudulent intent. (*Knapp* v. *Smith, supra; Abbey* v. *Deyo,* 44 N. Y. 344; *Buckley* v. *Wells,* 33 id. 518.)

We think this case has not, by reason of any circumstance called to our attention, been taken out of the operation of the statute which requires that "The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law." (3 R. S. [7th ed.] § 5, tit. 3, chap. 7, part 2, p. 2328.) We could not say that there was not evidence in the case upon which the jury was authorized to find the mortgage in question was executed and received with an intent to defraud the creditors of the mortgagor. The circumstances upon which such a finding might be based are particularly set forth and discussed by the appellants' counsel in an elaborate brief; but its careful consideration compels us to the conclusion that the question of fraudulent intent was exclusively for the jury, and its finding thereon cannot be disturbed. We may go still farther and say that, under the evidence in the case, we are of the opinion that the verdict accords with the probabilities and justice of the case.

We have carefully examined the numerous exceptions appearing in the record and can find none worthy of serious

refutation, except such as are covered by the discussion already had.

We think, therefore, that the judgment should be affirmed.

All concur.

Judgment affirmed.