### YOST *v.* GRAND TRUNK RAILWAY CO.

PARENT AND CHILD — NEGLIGENCE—LOSS OF SERVICES —ABANDONMENT BY FATHER.

> Since it is the duty of a child, if it is able, to support its indigent parent (2 Comp. Laws, §§ 4487, 4490), and of the parent to maintain a minor child, if necessary (2 Comp. Laws, § 4495), a wife, whose husband has deserted her and her minor children, may recover for loss of the services of her minor son, caused by the negligent act of defendant.

Error to Wayne; Murfin, J. Submitted October 25, 1910. (Docket No. 25.) Decided December 7, 1910.

Case by Sarah Yost against the Grand Trunk Railway Company, a foreign corporation, for negligent injuries to her infant son. Plaintiff obtained judgment in justice's court, and defendant appealed to the circuit court. A

judgment for defendant on verdict directed by the court is reviewed by plaintiff on writ of error.   Reversed.

*Clarence P. Milligan* and *Harry C. Milligan,* for appellant.

*Harrison Geer* (*W. K. Williams,* of counsel), for appellee.

Moore, J.   This case was commenced in justice's court.   It is stated in the declaration of the plaintiff, in substance, that the plaintiff is the mother of Harry Yost, a minor, who was wrongfully employed by the defendant at a hazardous occupation, against the knowledge and consent of plaintiff; that while in a position of extreme hazard and danger the minor was injured and deprived of his left hand, by reason of which injury the plaintiff lost the services of the said minor permanently.   It is further averred that plaintiff became obligated to pay physician's bills, nurse bills, and medicine bills for said minor.   The defendant pleaded the general issue.   A trial was had which resulted in a verdict and judgment of upwards of $300 in favor of the plaintiff.   The case was appealed to the circuit court.   Upon the trial in the circuit court the plaintiff gave testimony to the effect that she was the mother of Harry Yost, a minor, who was with his sister living at home with plaintiff and aiding in her support; that plaintiff relied solely upon the earnings of the minor and his sister for her support; that her husband had not supported or lived with her in 15 years; that she did not know his whereabouts and had not heard from him in four years, when he was in Chicago.   She further testified that the husband had not supported the children in 15 years.   She testified to the injury received by her son, and that by reason of the injury she was deprived of the earnings of her son.   The record shows the following:

"After the close of the testimony the defendant moved for a verdict in its favor for the reason that the plaintiff was not entitled to the services of the minor, but that the

same belonged to the father, which motion was granted by the judge and a verdict directed for the defendant, to which plaintiff excepted.   After the motion for a directed verdict was made plaintiff's counsel offered to show that there had been a divorce between the plaintiff and her husband, but the court stated that such fact did not in his opinion change the situation."

The certificate of the circuit judge is to the effect that the bill of exceptions contains all the testimony and proceedings necessary to the proper understanding of the question of law raised.   It clearly appears that upon this record the only question involved is whether the mother can recover for the loss of the services of the minor child.

It is the claim of the defendant that the common law is in force in this State; that primarily the father is entitled to the services of the minor; but conceding that by his conduct he may have lost that right, then the son, and not the mother, is entitled to his services.   It is conceded that there is no decision of our own court which is controlling.   The plaintiff has cited authorities which, it is urged, are in point.   The answer of defendant to this contention is that they are not so, by reason of the statutes in the States from which the decisions come.

The case of *Thompson* v. *Railway Co.* (C. C.), 104 Fed. 845, was one brought under a statute giving a right of action to the next of kin.   In disposing of the case the following language is used:

"The statute of the State which is the basis for the present action has been construed in numerous cases by the supreme court.   *City of Friend* v. *Burleigh*, 53 Neb. 674 (74 N. W. 50); *Orgall* v. *Railroad Co.*, 46 Neb. 4 (64 N. W. 450); *Chicago, etc., R. Co.* v. *Van Buskirk*, 58 Neb. 252 (78 N. W. 514); *Chicago, etc., R. Co.* v. *Young*, 58 Neb. 678 (79 N. W. 556).   An analysis of these cases establishes the doctrine that the facts stated in the petition must show that the next of kin were persons who were dependent upon deceased for their maintenance and support, or that deceased was under a legal obligation to furnish such next of kin support and maintenance, and that the facts must support such allegations

to entitle the party to recover, under a general claim of damages.   If special damages have been sustained by the next of kin, such special damages must be alleged in the petition.   They cannot be shown or recovered under a general claim of damages.   *  *  *   Under the law in this State there can be no question that the father was the next of kin to deceased, and that the recovery in this case, under the statute in question, can only be had for the damages which it may be reasonably inferred the father has sustained by reason of the death of his minor son.   If the petition should be amended, the facts, nevertheless, would remain that the father, more than 10 years prior to the deceased's death, abandoned his wife and deceased, and gave them no support and protection.   Under such state of facts, is the father entitled to the services of the son whom he thus abandoned ?   In Rodgers on Domestic Relations, § 467, it is said:

"'If the father deserts and abandons his family, exercises no control over them, interferes with them in no way, manifests no interest in their welfare, does not communicate with nor look after them, the relation of master and servant is dissolved, and the principle of servitude no longer sustains the right of the father to the wages of his infant son.   It is as if the father were dead, and the custody of the child and the right to appropriate his earnings thereby devolve upon the mother.   If the father refuses to be a parent in act as well as in name, the law will not recognize his right to control the earnings of his infant child, whom he thus casts aside to neglect.'

"The rule is well settled that, if the father emancipates his minor child, he is no longer entitled to the earnings of such child, and emancipation may be inferred by acts.   In 17 Am. & Eng. Enc. Law (1st Ed.), p. 397, it is said:

"'If the parent forces the child to leave the house or deserts or abandons him, the child is released from all filial duties which the law will enforce, and may seek his own welfare in his own way. Thus, an emancipation may be accomplished by wrong and violence.'

"And, as stated by Schouler, Domestic Relations, § 267:  'This is termed the presumption of necessity.'   In the note to *Wilson* v. *McMillan*, 35 Am. Rep. 117 (62 Ga. 16), it is said:

"'Emancipation is always presumed in cases of necessity.   Thus, if the parent absconds, expels his child, or leaves him to shift for

himself, and refuses or neglects to provide, emancipation is pre-sumed. * * * It would certainly be a great defect in the laws of any civilized people if they furnished no mode by which the innocence and helplessness of infancy, and the purity and ingenuousness of youth, could be protected from the brutality of an unnatural parent. As a father may forfeit his right to the custody and control of his child's person by abusing his power, so, by neglecting to fulfill the obligations of a father, he may forfeit his right to the fruits of his child's labor. If he provides no home for his protection, if he neither feeds nor clothes him, nor ministers to his wants in sickness or health, it would be a most harsh and unnatural law which authorized the father to appropriate to himself all his child's earnings. * * * But where the father has discharged himself of the obligation to support the child, or has obliged the child to support himself, there is no principle but that of slavery which will continue his right to receive the earnings of the child's labor.'

"Suppose in this case, the motion for a new trial should be sustained, and plaintiff permitted to amend the petition to correspond with the facts, by showing that at the time of the death of deceased his father was living, still plaintiff could not recover as, upon a new trial, the fact must remain the same, that the father abandoned the child years before, in a manner and under circumstances which must be held to be an act of emancipation on the part of the father, and for reason thereof the father is not entitled to, and could not, recover for the services of deceased. Then, under such facts, plaintiff would not even be entitled to judgment for nominal damages. While it is true that, the emancipation on the part of the father being presumed because of his desertion of his child, the right to the earnings of the child would belong to its mother, yet a recovery could not be had in this case, for the reason that the mother was not the next of kin; the father having survived the child."

In Tiffany on Persons & Domestic Relations, at pp. 261 and 262, it is said:

"A parent is only entitled to the services and earnings of his child while the child is supported by him. Although the general principle is clear and unquestioned that the father is entitled to the services of his minor child, and to all that such child earns by his labor, yet it seems to be equally clear that, as the right of the father to the ser-

vices of the child is founded upon his duty to support and maintain his child, if he should fail, neglect, or refuse to observe and perform this duty, his right to the services of his child should cease to exist; and such we hold to be the law.   * * *   As the father may forfeit his right to the custody and control of his child's person by abusing his power, so, by neglecting to fulfill the obligations of a father, he may forfeit his right to the fruit of his child's labor.   If he provides no home for his protection, if he neither feeds nor clothes him, nor ministers to his wants in sickness or health, it would be a most harsh and unnatural law which authorized the father to appropriate to himself all the child's earnings.   It would be recognizing in fathers something like that pre-eminent and sovereign authority which has never been admitted by the jurisprudence of any civilized people, except that of ancient Rome, whose law held children to be the property of the father, and placed them in relation to him, in the category of things instead of that of persons."

At page 256 of the same author the following language is used:

" There is some authority to the effect that the right to a child's services and earnings does not vest in the mother, even when the father has deserted her and the child, or is dead; that the mother, even under such circumstances as these, is entitled only to reverence and respect, and has no authority over the child, or right to its services.   This, however, is a mistake, due perhaps, to some extent, to following without reason or other authority the dictum of Blackstone and other old writers and judges to that effect, and to a failure to recognize the fact that there is no longer any such principle or doctrine as the old feudal doctrine which, requiring, as it did, the abject subjection and servitude of the wife, was unable to recognize the supremacy of the mother.   By the overwhelming weight of modern authority, a widowed mother is entitled to the services and earnings of a minor child to the same extent as the father would be if living.   The same rule applies where a wife is deserted by her husband, or he is imprisoned, and she is left to maintain her children, for the same reasons for the rule apply in both cases."

Many cases are cited in the notes.

Under the provisions of section 4495, 2 Comp. Laws,

the plaintiff is under obligation, if it becomes necessary, to maintain the minor child and if she has property it would be liable to seizure to secure his maintenance. If the plaintiff is poor, under the provisions of sections 4487 and 4490, 2 Comp. Laws, it would be the duty of the minor child, if able, to maintain her. If the duty of maintenance of the minor child is upon the mother when living separate from her husband, it would be hard lines to say that if his services could be of any value to her she should not be entitled to them. We think the court erred in disposing of the case as a legal question.

Judgment is reversed, and new trial ordered.

BIRD, C. J., and OSTRANDER, HOOKER, and STONE, JJ., concurred.