JACOB DEKORSE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUIS KOPPY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 2116, 2117. Promulgated May 22, 1945.

*Edgar W. Pugh, Esq.,* for the petitioners.
*Walter W. Kerr, Esq.,* for the respondent.

## OPINION.

Smith, *Judge*: We think that the respondent correctly determined that petitioners are taxable on all of the partnership earnings. It is too plain for argument that the real purpose of petitioners in attempting to bring their wives and Arthur Koppy into the partnership was to reduce taxes on their shares of the partnership earnings. While that fact alone might not condemn their acts (*Gregory* v. *Helvering*, 293 U. S. 465), it does give point to our inquiry as to whether the arrangements which they made were genuine and of substance.

The formation of the partnership was not intended to bring any new capital into the business or to procure the services of any of the alleged partners. Ella Koppy, wife of Louis Koppy, had taken an active part in the business from its inception, working at the office for about three days a week. However, she performed those services as an employee and received regular pay for what she did. There is no evidence that her services were worth more than she was paid or that she ever made any contribution either of services or money to the business. She continued to do the same things under the alleged partnership that she had done before.

Arthur Koppy also worked for the company during his school vacations and sometimes weekends and was paid for his services. The evidence is that he worked as an apprentice making tools and dies. He was 16 years of age in 1941.

Helen DeKorse, wife of petitioner Jacob DeKorse, took no active part in the business and knew nothing about it except what her husband told her. She devoted most of her time to household duties. She had no claim whatever to any interest in the business or its earn-

ings except through the alleged gift from her husband of one-half of his 40 percent interest.

Petitioners were in complete control of the business and were wholly responsible for its conduct at all times.

The evidence does not show what was done, if anything, to complete the gifts to the wives and Arthur Koppy of proportional interests in the assets of the business, referred to in the corporate resolution of February 28, 1941. Petitioner Koppy's testimony on this point was in part as follows:

Q. Was there ever any assignment of any assets that came from the Koppy-DeKorse Tool and Die Company, and which were placed in this partnership, was there any assignment of any of those assets to these individuals as such, to your wife or to your son?

A. You mean did they turn them back into the company?

Q. No, I am asking you if you ever made any formal assignments of any interests that you had in those assets that came from the corporation, and represented the assets going into the partnership?

A. We made out a lot of papers around that time, I am not in a position to state definitely which is which.

Q. What assets did the Koppy-DeKorse Tool and Die Company own, in 1941, when they dissolved?

A. They owned the building, they owned the equipment, everything that wasn't subject to payments, work in process.

Mr. Pugh: That is contained as part of the Petitioner's Exhibit here, the assets.

Q. Now, did you make any attempt to deed to your wife or minor son, any part of this real estate?

A. Deed, no.

Q. You made no bills of sale of any kind with respect to the assets of the corporation, did you?

A. There was a bill of sale somewhere mixed up in the picture, but I don't know just exactly where.

There was never any actual division of the assets and no time at which the wives or Arthur Koppy could have exercised any independent control over their alleged interests in them.

The facts here are very much like those in *Mead* v. *Commissioner*, 131 Fed. (2d) 323; certiorari denied, 318 U. S. 777, where the taxpayer dissolved a wholly owned corporation, made a gift to his wife of a one-half interest in the assets, and then undertook to make his wife an equal partner with him in the business. The business was general insurance and real estate. Holding the husband taxable on all of the income from the business, the court said:

Taxation being a practical matter in which substance controls over form, the question turns upon whether the business was in reality a genuine partnership or was operated in partnership form for the purpose of tax avoidance. [Cases cited are *United States* v. *Phellis*, 257 U. S. 156; *Weiss* v. *Stearn*, 265 U. S. 242; *Gregory* v. *Helvering*. 293 U. S. 465; *Higgins* v. *Smith*, 308 U. S. 473; *Helvering* v. *Clifford*, 309 U. S. 331; *Tinkoff* v. *Commissioner*, 120 Fed. (2d) 564; certiorari

denied, 314 U. S. 581.] If it was a bona fide partnership and the income thereof represented a mutual investment of capital or services by the partners, such income was divisible between the two for tax purposes; but, if everything of value to the business was contributed by one of them, all of the profits were actually earned by that individual and were properly taxable solely to him. [Cases cited are *Lucas* v. *Earl*, 281 U. S. 111; *Corliss* v. *Bowers*, 281 U. S. 376; *Griffiths* v. *Helvering*, 308 U. S. 355; *Jones* v. *Page*, 102 Fed. (2d) 144; *Covington* v. *Commissioner*, 103 Fed. (2d) 201.] * * *

\* \* \* \* \* \* \*

It thus appears, or at least the Board had the right to infer from the evidence, that Mrs. Mead made no actual contribution to the capital of the partnership, contributed no services, had no voice in the conduct of the business, and received a portion of the profits, not as a partner, but only by reason of her marital relationship. * * *

See also *O. William Lowry*, 3 T. C. 730; *Frank J. Lorenz*, 3 T. C. 746; affd., 148 Fed. (2d) 527; *Schroder* v. *Commissioner*, 134 Fed. (2d) 346; *Francis Doll*, 2 T. C. 276; affd. (C. C. A., 8th Cir.), 149 Fed. (2d) 239.

Viewing the transactions here as a whole, we think that what the petitioners intended to do was not to make out and out gifts of the assets of the business to their wives and Arthur Koppy, but was to give them portions of the income from the business so as to avoid income tax liability thereon, a thing not countenanced by our income tax laws. *Burnet* v. *Leininger*, 285 U. S. 136; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122. We sustain the respondent in his determination that petitioners are taxable on all of the income from the business for 1941 in the proportion of their proprietary interests therein. In determining such income, deductions should be made of the salaries paid to Ella Koppy and Arthur Koppy.

The next question is whether petitioner Louis Koppy is taxable on the earnings of his minor son, Arthur, in 1940 and 1941. Those earnings amounted to $301.48 in 1940 and $636.48 in 1941.

Under the revenue acts applicable for years prior to 1944 the Commissioner's regulations and rulings required a parent to report in his (or her) return the earnings of a minor child, if under the laws of the state where they resided the parent had a right to such earnings. It is provided in section 19.51–3 of Regulations 103, applicable to the years 1940 and 1941, that:

* * * If under the laws of a State the earnings of a minor belong to the minor, such earnings, regardless of amount, are not required to be included in the return of the parent. In the absence of proof to the contrary, a parent will be assumed to have the legal right to the earnings of the minor and must include them in his return.

Petitioner does not question that under the laws of Michigan a father has the right to the earnings of his minor son. In his brief petitioner cites cases in which the Supreme Court of Michigan has so

held. For instance he quotes in his brief from *Van Sweden* v. *Van Sweden*, 250 Mich. 238; 230 N. W. 191, as follows:

The right of a father to the services of a minor son is unquestioned. The right runs back into the mists of the common law and, earlier than that, is found in Roman law, digested by Justinian. At all periods, the father could waive the right. Emancipation of a son by a father involves no such formality as oldtime manumission of a slave. It may be special or general, partial or complete. It may be express, or established by circumstances. There was at least special and partial emancipation as a consequence of the hiring of the son by the father under an agreement to pay the son wages.

Petitioner contends, however, that he was relieved of the obligation of reporting Arthur's earnings because he, Arthur, had been emancipated. We have found on the evidence of record that this was not the fact. It is true that Arthur was permitted to receive his earnings and spent them as he pleased, but petitioner continued to furnish him a home and support him throughout both years and to exercise over him the usual care of a parent for a minor child. Emancipation means more than merely permitting a minor to keep his own earnings. It is defined in Bouvier's Law Dictionary as "An act by which a person who was once in the power or under the control of another is rendered free."

The Supreme Court of Michigan, in *Yost* v. *Grand Trunk Ry. Co.*, 163 Mich. 564; 128 N. W. 784, quoted the following from Tiffany on Persons & Domestic Relations, at pp. 261 and 262:

A parent is only entitled to the services and earnings of his child while the child is supported by him. Although the general principle is clear and unquestioned that the father is entitled to the services of his minor child, and to all that such child earns by his labor, yet it seems to be equally clear that, as the right of the father to the services of the child is founded upon his duty to support and maintain his child, if he should fail, neglect, or refuse to observe and perform this duty, his right to the services of his child should cease to exist; and such we hold to be the law. * * *

In *Cohen* v. *Delaware L. & W. R. Co.*, 150 Misc. 450; 269 N. Y. S. 667, 671, 672, it was said:

That a minor child may be emancipated by its parents' consent, express or implied, is well-established law. *Stanley* v. *National Union Bank*, 115 N. Y. 122, 134, 22 N. E. 29. The meaning of emancipation is, not that all of the disabilities of infancy are removed, but that the infant is freed from parental control, and has a right to his own earnings. *Commonwealth* v. *Graham*, 157 Mass. 73, 76, 31 N. E. 706, 16 L. R. A. 578, 34 Am. St. Rep. 255.

*       *       *       *       *       *       *

The effect of emancipation is to deprive the parent of control over the child, so long as the emancipation continues. It involves a surrender of the right to the care, custody, and earnings of the child, as well as a renunciation of parental duties. * * *

In *Mulder* v. *Achterhof*, 258 Mich. 190; 242 N. W. 215, it was said: "Allowing a minor to retain small earnings as spending money is not in and of itself proof of emancipation."

There is no evidence here that petitioner did any more towards emancipating his son than to permit him to have his own earnings. It is clear that this did not constitute an emancipation. We think that the respondent correctly included in the returns of petitioner Louis Koppy his son Arthur's earnings for 1940 and 1941.

The remaining issue, which was raised by the respondent in his amended answer, relates to the gain realized by petitioners upon the liquidation of the Koppy-DeKorse Tool & Die Co., a corporation, on February 28, 1941. Actually, there is no controversy between the parties on this issue, since it was stipulated at the hearing that the facts on which the respondent based the increase in the deficiencies are as stated by the respondent in his amended answer. Those facts show the cost to petitioners of all their shares in the corporation, the time of their acquisition, and the value of the assets that were distributed to them in the liquidation. The determination of petitioners' gain and the amounts thereof which are recognizable under the capital gain provisions of the statute are matters of simple computation. The increased deficiencies resulting from such computation will be allowed to the extent of the amounts claimed by the respondent in his amended answer.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

MELLOTT, *J.*, concurs only in the result.

ARUNDELL and VAN FOSSAN, *JJ.*, dissent.

———

BLACK, *J.*, dissenting: I dissent from that part of the majority opinion wherein it holds that no partnership was formed under the partnership agreement of March 1, 1941, between Jacob DeKorse, Louis Koppy, Ella Koppy, Helen DeKorse, and Arthur Koppy, acting through his mother as guardian.

I think a valid partnership was formed by this agreement, at least as to Jacob DeKorse, Louis Koppy, Ella Koppy, and Helen DeKorse. They were all adults and fully able to contract as partners and did in fact do so. Whether the minor, Arthur Koppy, was competent to contract under the laws of Michigan through his mother acting as his guardian, although she had not yet been appointed his legal guardian by the court, I express no opinion. Cf. *Justin Potter*, 47 B. T. A. 607, in which the validity of a similar partnership was up-

held. I have not investigated Michigan law on that subject and the majority opinion makes no point of it. The majority opinion simply holds that the partnership should not be recognized for the purpose of the income tax because what was done amounted to nothing more than an assignment by petitioners Jacob DeKorse and Louis Koppy to members of their families of a part of their income to be earned in the future.

I think the undisputed facts are directly contrary to what the majority opinion holds. What are some of the undisputed facts in this case? First, there is the resolution adopted on February 28, 1941, which provided for the dissolution of the Koppy-DeKorse Tool & Die Co., a corporation, and the transfer of its assets to petitioners Jacob DeKorse and Louis Koppy in certain named proportions and to Ella Koppy, Arthur Marvin Koppy, and Helen DeKorse in certain other named proportions. Following the adoption of this resolution providing for the dissolution of the corporation and distribution of its assets to Louis Koppy, Ella Koppy, Arthur Marvin Koppy, Jacob DeKorse, and Helen DeKorse, these same five individuals entered into a partnership agreement to conduct as a partnership the business of the Koppy-DeKorse Tool & Die Co. previously conducted as a corporation. This partnership agreement which was entered into by petitioners and their wives and Arthur Koppy is incorporated in the findings of fact and seems to me to be a well integrated and well drawn legal document. It contains one of the clauses essential to partnership agreements, which is that the parties agree to share profits and to be obligated for any and all deficits and losses of the partnership business.

The Board of Tax Appeals in prior cases quoted from Chancellor Kent the following definition of a partnership: "A contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss in certain proportions." See Mertens Law of Federal Income Taxation, sec. 35.03. It seems to me that the partnership agreement in the instant case clearly meets the tests provided in Chancellor Kent's definition. The definition of partnership found in the Internal Revenue Code is even broader in scope than Chancellor Kent's definition. See sec. 3797 (a) (2), I. R. C. It is, of course, the Federal law which is controlling here.

Here are some of the facts in the record which show that the partnership of Koppy-DeKorse Tool & Die Co. was not only legally formed, but that it was thereafter lived up to: Under petitioners' instructions their accountant made book entries to show a change of the business to a partnership. Capital accounts were set up for the five partners, in each of which was entered an amount of approximately $10,035.13 representing one-fifth of the appraised value of the assets as of February 28, 1941. Notice of the organization of the partner-

ship was given to Federal and state authorities in connection with social security and unemployment compensation matters and also to insurance companies and other interested parties.

A partnership return was filed by the partnership for the period March 1 to December 31, 1941, which showed a net profit of $140,261.84. The partners' shares of the earnings as shown on the return, each share including 20 percent of the profits plus his or her salary or wages, were as follows:

| | |
|---|---:|
| Helen DeKorse | $24,774.00 |
| Jacob DeKorse | 29,773.99 |
| Arthur Koppy | 25,360.86 |
| Ella Koppy | 25,579.00 |
| Louis Koppy | 34,773.99 |
| Total | 140,261.84 |

Each partner's drawing account on the company's books was credited with $14,754.48 of profits, plus his or her salary or wages, and a credit of $10,000 was made to each of their capital accounts. Checks were issued to each of the partners for their distributable shares of the profits. Some of these funds were invested in war bonds and tax bonds. Neither of petitioners exercised any control over the funds that were distributed to their wives. Ella Koppy, as guardian for Arthur, received and retained control over his share of the profits. Yet in the face of the foregoing undisputed facts and other facts which are in the record, the majority opinion holds (I quote from the opinion) :

> Viewing the transactions here as a whole, we think that what the petitioners intended to do was not to make out and out gifts of the assets of the business to their wives and Arthur Koppy, but was to give them portions of the income from the business so as to avoid income tax liability thereon, a thing not countenanced by our income tax laws. *Burnet* v. *Leininger*, 285 U. S. 136; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122. * * *

It seems to me that *Burnet* v. *Leininger*, *supra*, the first case cited in the majority opinion, is not applicable to the facts of the instant case. In that case the Supreme Court affirmed a decision of the Board of Tax Appeals reported in 19 B. T. A. 621. The partnership there involved was the Eagle Laundry Co., in which Charles P. Leininger owned a one-half interest and another partner owned the other one-half interest. Leininger undertook to make his wife a subpartner in his one-half interest without making her a full partner in the Eagle Laundry Co. This fact is shown in the following quotation taken from our opinion in that case:

> It is observed from the testimony in the case that the books and records of the Eagle Laundry Co., the partnership, contained no entry reflecting part ownership by the wife or any payments to her or for her account. Partnership returns for the taxable years 1921, 1922, and 1923 were sworn to by petitioner and state

that the names of the partners are C. P. Leininger and M. T. Monaghan, each owning one-half. We note further that Mrs. Leininger contributed neither capital nor services to the partnership and that all checks covering profits were made to the husband and by him deposited in a joint account. * * *

On these facts we held that Mrs. Leininger was at most a subpartner in her husband's one-half interest in the Eagle Laundry and that this amounted only to an assignment of income and that such an assignment was ineffective to relieve the assignor, Leininger, from payment of tax on the income thus assigned. This view was upheld by the Supreme Court, Chief Justice Hughes saying in his opinion, among other things, as follows:

* * * There was no transfer of the corpus of the partnership property to a new firm with a consequent readjustment of rights in that property and management. If it be assumed that Mrs. Leininger became the beneficial owner of one-half of the income which her husband received from the firm enterprise, it is still true that *he*, and not she, was the *member* of the firm and that she had only a *derivative* interest. [Italics supplied.]

In the instant case we have no such situation as the Supreme Court pointed out was present in the *Leininger* case. Here we have the creation of a new partnership to succeed the dissolved corporation, with recognition of the wives and Arthur Koppy as full partners, entitled to share in the profits and liable for the losses. These facts, I think, make the instant case clearly distinguishable from the *Leininger* case.

The other two cases cited by the majority opinion, *Helvering* v. *Horst, supra,* and *Helvering* v. *Eubank, supra,* are equally as inapplicable as *Burnet* v. *Leininger.* They are both clearly assignment of income cases and fall within the ambit of *Lucas* v. *Earl,* 281 U. S. 111. Instead of citing the *Horst* and *Eubank* cases, I think it would have been much more appropriate to the facts of the instant case if the majority opinion had given consideration to what the Supreme Court said in *Blair* v. *Commissioner,* 300 U. S. 5. In that case, among other things, the Court, speaking through Chief Justice Hughes, said:

Our decisions in *Lucas* v. *Earl* * * * and *Burnet* v. *Leininger* * * * are cited. * * * These cases are not in point. The tax here is not upon earnings which are taxed to the one who earns them. * * *

In the instant case, the tax is upon income as to which, in the general application of the revenue acts, the tax liability attaches to *ownership*. See *Poe* v. *Seaborn, supra; Hoeper* v. *Tax Commission,* 284 U. S. 206. [Italics supplied.]

If Ella Koppy, Arthur Koppy, and Helen DeKorse did not *own* their proportionate share of the assets in the partnership of Koppy-DeKorse Tool & Die Co., which was earning the income in question, then it would be difficult for me to understand what it takes to constitute ownership. If they did own their proportionate share of the assets, as I think they surely did, then how can it be said in view of the Supreme Court's decisions in such cases as *Poe* v. *Seaborn, supra,* and

*Blair* v. *Commissioner, supra*, that their shares of the income should be taxed to Jacob DeKorse and Louis Koppy? I think to say so is altogether wrong and is in direct conflict with the two Supreme Court cases which I have just cited.

In considering the instant case we should bear in mind that this is not a case where the earnings of the partnership are the personal service earnings of Jacob DeKorse and Louis Koppy, the husbands. These two were the managing partners and each was paid a salary for his services. That salary each returned as his own individual income and, so far as I can see, each entirely complied with the law. In a manufacturing or commercial partnership where capital is a substantial income-producing factor and where the partners have agreed among themselves upon salaries to managing partners, which are regarded as adequate compensation for their personal services, and they return that as their own individual income, there is no reason why we should question their judgment in that respect, especially where the Commissioner has made no point of it.

Inasmuch as the partnership here was not one where the earnings of the business were purely personal service earnings of Jacob DeKorse and Louis Koppy, I regard such cases as *Doll* v. *Commissioner*, 149 Fed. (2d) 239, affirming 2 T. C. 276, as altogether inapplicable. It is clear, from both the Tax Court's opinion and that of the Circuit Court of Appeals, that the earnings in that case were strictly personal service earnings and, therefore, controlled by *Lucas* v. *Earl*, *supra*. That fact, it seems to me, is made perfectly plain in the following quotation from the Circuit Court's opinion:

As to the "circumstances attendant on * * * its * * * operation" * * * of the business during this contract, the evidence is as follows: The business was *purely one of personal services* for the earnings of commissions in selling or causing the sale of shoes of St. Louis manufacturers to dealers in Cuba and Puerto Rico, petitioner bearing his own selling expenses. It was conducted in one of two ways dependent on whether the buyer came to St. Louis or was contacted in Cuba or Puerto Rico by petitioner or the local representative. [Italics supplied.]

Further, I think the majority opinion is in direct conflict with *Davis B. Thornton*, 5 T. C. 116. In that case there was, as here, the dissolution and liquidation of a corporation, followed by the formation of a partnership between a husband and his wife to carry on the same business hitherto carried on by the corporation. We upheld the validity of the partnership. True, in that case the wife was a stockholder in the corporation which was dissolved, she having received her stock as a gift from her husband, most of it just a short time before the formation of the partnership, while here the husbands made gifts to their wives of a proportionate part of their assets in the

corporation at the time it was liquidated. This, of course, is a difference in detail, but it seems to me that the difference is unimportant and can not make any possible difference in principle upon which a well grounded distinction can be based.

It is, therefore, my judgment that the majority opinion is in direct conflict with *Davis B. Thornton, supra,* adopted by this Court today, as well as contra to such other cases as *Robert P. Scherer,* 3 T. C. 776; *J. D. Johnston, Jr.,* 3 T. C. 799; *Felix Zukaitis,* 3 T. C. 814; and *M. W. Smith, Jr.,* 3 T. C. 894. The effect of the majority opinion, in my judgment, is to overrule the last four cases referred to without even mentioning them. I, therefore, respectfully record my dissent.

LEECH, TYSON, AND DISNEY, *JJ.,* agree with this dissent.