## W. M. MAULDIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 652. Promulgated September 19, 1945.

*Richard E. Thigpen, Esq.*, for the petitioner.
*E. M. Woolf, Esq.*, for the respondent.

744

OPINION.

OPPER, *Judge* : The only question is whether respondent's refusal for the year 1940 to recognize the wife as a partner in the business conducted for many years by petitioner individually has been shown by the evidence to be unwarranted. Respondent has not determined that there was no partnership, but has given full credence to a newly formed partnership consisting of only petitioner and his son. He has attributed the wife's alleged fourth share to petitioner, saying:

It is held that the amount of $14,980.28 representing one-fourth of the profits of the partnership, Rock Hill Coca Cola Company, Rock Hill, South Carolina, for the year 1940, constitutes income to you, since your wife, who reported the income, was not, in fact, a member of the partnership for profit sharing purposes. The amount of $14,980.28 has, accordingly, been included in your taxable income for the year 1940.

We are unable to conclude from the evidence that the wife was in fact a partner in the business. Although petitioner did execute the document called a "gift" to his wife and did execute another document purporting to be an agreement of partnership with his wife, there is no evidence which gives substance to these papers or indicates that a partnership with the wife was actually conducted or carried on within the meaning of the Internal Revenue Code.

It was expressly provided that the wife should contribute noth-

ing by way of time or service to the business, and in fact she contributed nothing. Such capital as there had been in the business remained there. The wife brought nothing new to it.[1] To say that there could be a business conducted as a partnership here because the wife "contributed" capital requires that we give an effect to the gift and "partnership agreement" which they did not have. The testimony shows that in every respect save one the business was conducted precisely as it had been theretofore. Not even the books of account were adjusted to reflect any new proprietary interest. See *Miller* v. *Commissioner*, 150 Fed. (2d) 823. Only the division of income was changed. But the earning of the income was in no respect altered by the formal documents which petitioner chose to execute. "It does not appear that the profits would have been any less had the agreement * * * never been executed." *Clarence L. Fox*, 5 T. C. 242. And where the sole effect of such action is to attempt to attribute those profits, for tax purposes, to a different source, we think the effort can be no more effectual here than it was in *Burnet* v. *Leininger*, 285 U. S. 136.

If prior to the assignment to the wife the business was conducted as a sole proprietorship, as it clearly was, and if thereafter the conduct of the business was unchanged, as petitioner testified, we can not say that respondent erred in refusing recognition to so purely formal a gesture. As in *Earp* v. *Jones* (C. C. A., 10th Cir.), 131 Fed. (2d) 292; certiorari denied, 318 U. S. 764:

* * * The real purpose of the partnership was to minimize income taxes. It is well settled that it is not unlawful to avoid the attachment of taxes. * * * The change must, however, be real and substantial. One may not merely change the form but do business in substantially the same way. * * *

In fact, we can not tell whether the income of the business was not primarily the product of the personal services and connections of petitioner and possibly of his son, since on this phase of the issue there is no proof.[2] Paraphrasing what was said in *M. M. Argo*, 3 T. C. 1120, 1132; affd. (C. C. A., 5th Cir.), 150 Fed. (2d) 67, "The company owned physical assets, such as land, building, machinery,

---

[1] In *Clarence L. Fox*, 5 T. C. 242, we said:

"We think that the respondent's determination must be sustained. The manifest purpose of the petitioners in bringing their wives into the partnership set-up was that of reducing income taxes. The wives brought no capital into the business and contributed no services. The very definition of a partnership requires a contribution of capital or services, or both, by persons for the conduct of a business for the mutual benefit of the contributors. Plainly that requirement of a partnership relationship does not exist here."

[2] Many of the decisive figures remain obscure. For example, the 1940 agreement recites that the wife's one-quarter contribution was $40,000. Yet almost simultaneously petitioner, for gift tax purposes, valued another one-quarter interest—that which he was then giving his son—at $25,000. Even assuming the higher figure, the wife's "take" for 1940 of practically $15,000 was at the rate of 37½ percent per annum on her "capital."

and equipment, furniture and fixtures, delivery equipment, and inventories. * * * the company used physical assets[3] of the value of approximately $20,000 [here $60,000] during five years. The books and partnership returns show that during the years 1937 to 1940, inclusive, the annual net earnings ranged from $15,986.88 in 1937 to $9,305.88 in 1940 [here $35,626.08 in 1935 to $54,158.14 in 1940]. Such annual earnings are 50 percent and more * * * of the capital investment in physical assets. * * * While the evidence affords no basis for a positive finding that the activities and services of the petitioner were the main factors in the production of the income, it points quite strongly in that direction. In this situation, if the petitioner would escape the tax on the distributive shares of his partners, we think that he should have shown that his activities and services were not the main factors in the production of the income of the company."

Yet even assuming they were not so here, the agreement to divide the profits according to the supposed shares in the capital of the enterprise, while at the same time requiring full devotion of petitioner's time and effort and those of his son to the business and the exclusion of participation by the wife, leads inevitably to the result that some— undisclosed—part of the earnings from their labor was being enjoyed by the wife—a contrivance which has long been viewed as inadmissible in dealing with the proper allocation of income tax burdens. *Lucas* v. *Earl*, 281 U. S. 111.

The fact that the wife was permitted to, and did, withdraw and use the major part of the income credited to her is not by itself significant, although the opposite may sometimes be an effective demonstration of unreality in the eyes of the parties themselves. But in all such cases, some derivative legal right, enforceable as between the parties, is recognized to exist without precluding an imposition of the tax burden upon the one actually responsible for the production of the income. *Burnet* v. *Leininger*, *supra*; *Lucas* v. *Earl*, *supra*; *Clarence L. Fox*, *supra*; *M. M. Argo*, *supra*; see *Helvering* v. *Clifford*, 306 U. S. 331; *Helvering* v. *Horst*, 311 U. S. 112.

The present facts are in many respects comparable to those in the recent case of *Lewis Hall Singletary*, 5 T. C. 365. The question, as we said there, is whether "they show that petitioner and his wife were 'carrying on business in partnership' (Sec. 181, I. R. C.) * * *."

* * * Testimony was also adduced indicating that petitioner felt impelled to make each gift by fairness to the respective recipients—in the case of the wife

---

[3] The only indication in the present case of physical assets employed, which derives from an income tax return for a prior year, shows an original undepreciated cost of less than $60,000. Computing the contribution of the wife on that basis, and conceding her a 10 percent return, the amount allocated to the earnings of her capital interest, if she had one, would be $1,500 a year instead of the $15,000 she was permitted to receive. The balance, presumably, was due to the services and management contributed by the active partners.

in recognition of the fact that she had aided, financially and otherwise, in the establishment of the business * * *. We would not discount a laudable show of gratitude; but, as we view it, the essential determination is more fundamental—was there a real carrying on of business in partnership?
* * * The wife brought in no new capital and contributed no services. * * * The business was carried on precisely the same after the document was executed as it had been carried on before. Moreover, it is not at all clear that the business was not largely personal in its nature, where capital was only incidental. Cf. *Doll* v. *Commissioner*, 149 Fed. (2d) 239. In any event the evidence falls far short of convincing us that the respondent erred in determining that the 1940 income from the business * * * was taxable in its entirety to petitioner.

The decision in *N. H. Hazlewood*, 29 B. T. A. 595, cited by petitioner, is to some extent similar to the case at bar, and it held that the wife and daughters were partners with the husband in a Coca-Cola bottling business and that the partners' shares of the income of the business were not properly included in the husband's taxable income. That decision was promulgated December 15, 1933, and, were it not for the later decisions heretofore cited, might require a similar decision for the taxpayer here. It is, however, not in harmony with the realistic attitude enjoined by those cases, and we are therefore constrained to reach a different conclusion.

We find that the wife was not a partner, and that respondent's determination was correct.

Reviewed by the Court.

*Decision will be entered for the respondent*

TYSON, *J.*, dissents.

---

BLACK, *J.*, dissenting: The facts seem to show clearly enough that when the original partnership between petitioner and his wife was formed in January 1937, following a gift which petitioner had made his wife on December 23, 1936, one of the primary motives was to reduce petitioner's income taxes.

The taxable year which we have before us is the year 1940 and the partnership agreement which was in force for the greater part of that year was the one which petitioner, his wife, and his son made April 1, 1940, and which was substantially similar in form to the earlier partnership agreements which had been entered into for the years 1937, 1938, and 1939. If it be assumed that the same tax-saving motive primarily inspired this latter partnership agreement as it did those which preceded it, that fact standing alone does not make petitioner taxable upon his wife's share of the partnership income.

"Arrangements within families for the diversion of income, while not necessarily subject to condemnation because of the close relationship of the parties, are always subject to careful scrutiny and clear and convincing evidence is required to establish their bona fides." See

*Harry C. Fisher*, 29 B. T. A. 1041; affd., 74 Fed. (2d) 1014. If, when the careful scrutiny above described is exercised in a given case and it is shown that what was done is a mere sham and subterfuge, then it is not recognized for tax purposes and what was done is treated as if it had never been done. *Gregory* v. *Helvering*, 293 U. S. 465. On the other hand, if the transaction is real and what it purports to be and is thereafter lived up to, the tax-saving motive does not vitiate it. *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14. In the latter case the court said:

* * * In *Gregory* v. *Helvering*, supra, * * * the incorporators adopted the usual form for creating business corporations; but their intent, or purpose, was merely to draught the papers, in fact not to create corporations as the court understood that word. That was the purpose which defeated their exemption, not the accompanying purpose to escape taxation; that purpose was legally neutral. Had they really meant to conduct a business by means of the two reorganized companies, they would have escaped whatever other aim they might have had, whether to avoid taxes or to regenerate the world.

So in the light of the foregoing authorities the important inquiry in the instant case is: Was the partnership agreement in force during the taxable year between petitioner, his wife, and his son in the operation of Rock Hill Coca-Cola Bottling Co. a mere artifice and subterfuge, or was it real and substantial? The Commissioner has recognized the partnership as real and substantial in so far as it concerned petitioner and his son, W. M. Mauldin, Jr. He has determined, however, and still contends that the partnership was a mere artifice and a sham in so far as it concerned petitioner's wife, Mayme W. Mauldin. It seems to me that in the face of the record this latter determination is altogether unwarranted. Despite the Commissioner's determination that Mayme W. Mauldin "was not, in fact, a member of the partnership for profit sharing purposes," the findings of fact by the author of the majority opinion show that for the period December 31, 1937, through December 31, 1943, there were credited to the account of Mrs. Mauldin as her share of the profits during the several years embraced therein credits to the aggregate amount of $98,734.54 and there were debits to an aggregate amount of $76,627.49, leaving a credit balance at the end of the period of $22,107.05. The findings of fact also show that petitioner's wife has been privileged to spend her withdrawals from the business as she pleases and makes her own investments. Also, at another place in the findings of fact it is said:

Prior to the year 1941 petitioner's son bought three pieces of real estate with funds of the partnership. In 1941 the new bottling plant of Rock Hill Coca-Cola Bottling Works was built on this real estate and the son conveyed an undivided one-half interest in this real estate to petitioner and an undivided one-fourth interest to petitioner's wife.

In the face of such facts and others in the record, I do not see how it can be held, as the Commissioner has done, that Mrs. Mauldin was not a member of the partnership for profit-sharing purposes. In my opinion she was a member of it for *all* purposes. It is true that she did not contribute any services to the partnership, but she did contribute to the partnership the one-fourth interest in and to all of the property and assets of the business of the Rock Hill Coca-Cola Bottling Co. which she had received as a gift from her husband. W. M. Mauldin, Jr., the son, made the same kind of a capital contribution to the partnership as his mother made and the Commissioner has not questioned the validity of that capital contribution. One does not have to contribute services to be a member of a partnership. Many perfectly valid partnerships exist where one or more partners contribute no services at all, their contribution being of capital. See vol. 6, sec. 35.03, Mertens Law of Federal Income Taxation. Cf. *Montgomery* v. *Thomas*, 146 Fed. (2d) 76.

The partnership involved in the instant case was not one where the earnings were due to personal services and therefore taxable to him who earned them under the doctrine of *Lucas* v. *Earl*, 281 U. S. 111. The majority opinion does say in one place that "In fact we can not tell whether the income of the business was not primarily the product of the personal services and connections of petitioner and possibly of his son, since on this phase of the issue there is no proof."

The undisputed facts show that the partnership was engaged in the Coca-Cola botting business, with all the extensive plant and equipment required for such a business. To say that a taxpayer in a case of that kind would have to go further and introduce evidence affirmatively showing that his business was not of a personal service character would be going entirely too far, I think, especially when it appears that no such issue was raised by the Commissioner.

As I have already stated, I think the facts show that a valid, legal partnership existed during the taxable year 1940 among petitioner, his wife, and his son and that the partnership agreement has been recognized and fully lived up to by the parties. I see no reason why the Government should disregard it in so far as Mrs. Mauldin is concerned. Sections 181, 182, and 183 of the code prescribe how partnership income shall be taxed, and these provisions of the law afford no justification for the Commissioner to tax petitioner with the part of the partnership income which was credited to Mrs. Mauldin on the partnership books and rightfully belonged to her.

I, therefore, respectfully dissent from the majority opinion.

ARUNDELL, VAN FOSSAN, and LEECH, *JJ*., agree with this dissent.