*Decisions will be entered under Rule 50.*

M. M. MONROE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6380.   Promulgated June 28, 1946.

*Q. L. Garrett, Esq.*, for the petitioner.
*Edward L. Potter, Esq.*, for the respondent.

OPINION.

HARRON, *Judge*: The question is, briefly, whether petitioner is taxable on all of the income of his business enterprises, as respondent has determined, or on only one-half of such income, as petitioner contends.

The question arises under section 22 (a) of the Internal Revenue Code. Under section 22 (a) the question is: Was the income attributed to petitioner's son Moi, Jr., as a partner income from a partnership for which he alone is liable in his "individual capacity," as provided by sections 181 and 182 of the code, or did petitioner, his father, despite the claimed partnership, actually create the right to receive and enjoy the benefit of the income, so as to make it taxable to him under sections 11 and 22 (a)? See *Commissioner* v. *Tower*, 327 U. S. 280. In considering this question the facts must be examined to ascertain whether the alleged partner, in this case a minor son, has done the following:

(a) Invested capital originating with him in the businesses.

(b) Substantially contributed to the control and management of the business.

(c) Performed vital additional services.

Petitioner undertook to sell an undivided one-half interest in three business enterprises, the chief one being located at Waycross, Georgia, to his son for $10 and other valuable consideration. Petitioner has testified that the consideration was $40,000. He has testified, also, that the following was done by which his son is alleged to have acquired an interest in his businesses. Three days before the "bill of sale" was executed, petitioner gave his son $14,750, which the son deposited in his bank account. Thereafter, on June 30 or July 1, 1941, the son gave petitioner a check for $15,000 which represented the $14,750 just received from petitioner, plus $250 of the son's own funds. The son is said to have given petitioner five notes for $5,000 each, or a total face amount of $25,000, to be paid serially, one in each year.[1] In 1942 petitioner is said to have credited his son with payment of the

---

[1] The notes were not offered in evidence.

first note of $5,000. He testified that, in connection with this note, he gave his son $4,000, and that he received $1,000 from his son out of his own cash.[2] There is no evidence that any other notes of the son have been paid or canceled as paid. The son did not give testimony in this proceeding, trial of which was in the year of 1946.

Upon this evidence it has been found as a fact that the son of petitioner did not contribute any capital to the businesses in question from any source originating with himself. See *Lusthaus* v. *Commissioner*, 327 U. S. 293. During the fiscal year ended June 30, 1942, the son received from the Georgia Hide & Fur Co. various sums totaling $3,011.23. It has not been shown that part of these withdrawals was not used to make payments to petitioner on the notes or in consideration of the purported sale by petitioner of a one-half interest in his businesses. The record contains a statement that at the end of June 1941 Moi, Jr., had about $250 cash, and that petitioner's purpose in giving him $14,750 was to enable him to make the purchase described in the "bill of sale." Under these circumstances and all of the facts, it would be improper to find as a fact that Moi, Jr., invested capital in the businesses originating with him.

Petitioner's son did not render any services in the businesses during the fiscal year July 1, 1941, to June 30, 1942, except for about six weeks after July 1, 1941, and three weeks in December 1941. Such services as he did render during those vacation periods are not shown to have been substantial contributions to the control and management of the businesses, nor vital additional services. Whatever petitioner's son did was of such nature that the regular employees did the same type of work when he returned to school. Perhaps some indication of the capacities of petitioner's minor son to perform services of importance in the businesses is found in the partnership agreement of July 1, 1941, which provided that the parties would agree mutually to increase the salary of Moi, Jr. "as he gains experience and knowledge of the businesses." Petitioner's son did not receive a salary during the fiscal year involved here.

The arrangements for taking Moi M. Monroe, Jr., into partnership consisted only of the three documents described in the findings of fact. It may be that, as petitioner testified, there was an intention for a short time on the part of the parents and the minor son that the son would not return to school after July 1, 1941. Such momentary intention, if it existed, weighs little in determining the question. The minor son had not participated in the business as a full time employee at any time prior to July 1, 1941, but had only spent time, intermittently, at his father's place of business when his school duties left him with spare

---

[2] Petitioner did not show any canceled check of his son, or other evidence to show payment to him in 1942 of $5,000 or $1,000.

time. Rather, it is the actual results which weigh heavily, and the facts show that the execution of the three papers did not bring about any real change in the economic relation of petitioner to the income in question, which was derived chiefly from a business which petitioner had developed by his own personal efforts during a period of twenty years. After the arrangements were made, as before, petitioner managed, controlled, and did the same amount of work in running his businesses, and he controlled the earnings of his businesses. At the end of the fiscal year one-half of the net profits was credited to a drawing account in the name of the son, but the son made no withdrawal thereof and exercised no control over such income. Since the control which a taxpayer can exercise over income is of the greatest importance in determining the liability for tax on income, *Helvering* v. *Horst*, 311 U. S. 112, it is noted that under the statutes of Georgia petitioner could have revoked at any time the consent he gave with respect to his minor son's engaging in business under the document of June 27, 1941.[3] Petitioner continued to support his minor son and to pay his school expenses, and he apparently consented to his son's returning to school.

The agreement of July 1, 1941, provided that Moi M. Monroe, Jr. would "devote his entire time to the business." Moi, Jr., did not fulfill his obligation and agreement under the partnership agreement.

Taking into consideration that Moi, Jr., did not contribute capital originating with himself, that he did not substantially contribute to the control and management of the businesses, that he did not otherwise perform vital additional services, and, finally, that he did not fulfill his agreement to devote his entire time to the businesses, it must be concluded that the partnership *died at birth*. Consequently there was a mere paper reallocation of the income of the businesses between two members of the family, and under such facts petitioner is held to be taxable upon the entire income of his business enterprises for the period in question. *Commissioner* v. *Tower, supra; Lusthaus* v. *Commissioner, supra; Ed Dubinsky Durwood;* 6 T. C. 682; *William G. Harvey,* 6 T. C. 653; *D. H. McEachern,* 5 T. C. 23; *Estate of Frank G. Ennis, Sr.,* 5 T. C. 1096, 1103; *P. A. Keenan, Sr.,* 5 T. C. 1371; *Jacob DeKorse,* 5 T. C. 94; *M. M. Argo,* 3 T. C. 1120; affd., 150 Fed. (2d) 67; certiorari denied, 326 U. S. 762; *Supornick* v. *Commissioner,* 150 Fed. (2d) 110.

---

[3] Georgia Code, 74–108, provides:

Parental Power—Until majority, the child shall remain under the control of the father, who is entitled to his services and the proceeds of his labor. This parental power shall be lost by

\* \* \* \* \* \* \*

4. Consent of the father to the child's receiving the proceeds of his own labor, which consent shall be revocable at any time.

The businesses in question have been conducted as a sole proprietorship by petitioner. The income results from buying and selling raw goods, which are graded and then resold. A certain amount of cash is borrowed each year to finance the buying operations. Physical assets, such as motor trucks, are required to bring in the produce which is purchased from growers, but, otherwise, physical assets have a minor place in the production of income. It appears that petitioner's personal managerial and other services and personal credit are largely responsible for the business done and the earnings realized, although, upon the record made, we can not find precisely upon the point, since on this phase of the case there is scant evidence on the performances by petitioner in his businesses. The indication is, however, that petitioner manages the business and that his employees are trained by him in whatever buying is done by them rather than by petitioner. Also, it appears that the selling operations are done by petitioner or are subject to his approval. If petitioner would escape tax upon the earnings of his businesses, part of his burden of proof requires him to show that his activities and services were not the main factors in the production of income. *M. M. Argo, supra.* This, he has not done.

Petitioner cites very little by way of authority to support his contention.[4] The authority which he has cited has been considered, but we find that it is not controlling of the question. For example, in *William F. Fischer*, 5 T. C. 507, it was held that a partnership of which a father and two sons were members was a valid, bona fide partnership for tax purposes. The facts in that case were that two sons, when they had become 34 and 30 years of age, were taken into partnership. They had graduated from a university several years prior to the execution of a partnership agreement; they had been educated with a view to their going into the father's business; and they had been employed in the business on a full time basis for several years. Both sons had accumulated capital and each contributed capital under the partnership agreement. After the agreement was made, both sons continued to work in the business. And, further, the sons "lived up to" their contract. (See page 517 of the report in the *Fischer* case.) Here, the facts are substantially different.

It is noted that the facts here do not present the situation of an individual who went directly from business activities into the armed service. In this case, petitioner's son only returned to school; he com-

---

[4] Petitioner cites only one case to support his contention, a memorandum opinion of the Tax Court, *Harry P. Samuels,* Docket No. 4038, which was entered (not promulgated under printed report) on August 27, 1945. (It must be observed here that it is contrary to the custom of the Tax Court to cite memorandum opinions, and when such opinions are cited in briefs, they are not ordinarily referred to in a printed opinion of the Court because such opinions represent only a decision on facts upon rules of law already established.)

pleted a course of studies and then proceeded to another school to commence a further course of studies. It was not until over one year after July 1, 1941, that he enlisted in the Army.

It is held that the arrangements set forth did not have the effect of making petitioner's son a bona fide member of a partnership. Respondent's determination is sustained.

*Decision will be entered for the respondent.*