ANNA HARRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MORRIS HARRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12984, 12985.   Promulgated May 12, 1948.

*D. Webster Egan, Esq.,* and *Dana Latham, Esq.,* for the petitioners.
*T. M. Mather, Esq.,* for the respondent.

820

822

**OPINION.**

HARRON, *Judge*: Anna and Morris Harris are copartners in the partnership which conducts business as Union Manufacturing Co. The partnership, consisting of the petitioners, is not questioned by the Commissioner. But respondent has determined that their son and daughter were not members of a copartnership with petitioners, and he has taxed to petitioners income which was reported as the children's shares of the earnings of Union Manufacturing Co. in 1943 and 1944. The question is whether one-sixteenth of the earnings of the above business is taxable to Albert Harris, and the same proportion to Betty Harris, as partners in Union Manufacturing Co., as petitioners contend; or whether such portions of the earnings are taxable to petitioners as part of the share of each in the earnings of the partnership of which they are indisputably partners.

Admittedly, Albert and Betty Harris did not have capital of their

own to contribute to a business venture as the contribution of partners. Petitioners allege that they made gifts of undivided one-sixteenth interests in a going business venture and that, thereupon, each child recontributed what he is said to have received, namely, an undivided interest. Respondent does not admit that any completed gifts *in praesenti* were made to the children. It is pointed out that one issue presented by the pleadings is whether the alleged gifts were made. In amended petitions, each petitioner alleges, *inter alia*, that on January 2, 1943, he and she gave an undivided part of his and her interest to each one of the children. Respondent denies this pleading in his amended answer. It is necessary, therefore, to consider the question which is put in issue, namely, whether bona fide gifts *in praesenti* were made.

The petitioners contend that a partnership was created on January 1, 1943, in which each child was a copartner, and that the partnership should be recognized for Federal income tax purposes. This question is put in issue by the pleadings of the petitioners that on January 2, 1943, the four members of the family agreed to associate themselves as copartners, which pleading the respondent has denied.

Petitioners state that they are familiar with the rule set forth in *Commissioner* v. *Tower*, 327 U. S. 280. They argue that the rule of that case, applied to the facts of this case, compels a holding that the alleged partnership of January 2, 1943, including the two children, must be recognized for Federal income tax purposes. Respondent argues that petitioners have misconstrued the rule of the *Tower* case. He cites the *Tower* case in support of his determination, and other cases where it has been applied, namely, *John G. Scherf*, 7 T. C. 346; affd., 161 Fed. (2d) 495; certiorari denied, 332 U. S. 810; *M. M. Monroe*, 7 T. C. 278; *Jacob De Korse*, 5 T. C. 94; affd., 158 Fed. (2d) 801; *W. M. Mauldin*, 5 T. C. 743; affd., 155 Fed. (2d) 666; and *O. William Lowry*, 3 T. C. 730; affd., 154 Fed. (2d) 448; certiorari denied, 329 U. S. 725.

Petitioners are in no better position in this case than were the taxpayers in *John G. Scherf*, supra; *Jacob De Korse*, supra; and *W. M. Mauldin*, supra. Their contentions are not new, but have been considered, under similar facts, in many cases by this Court, and other courts. In other words, petitioners present a contention by which, in effect, they ask to have the underlying principles in this type of issue reviewed for them. We think it is unnecessary to do so, other than to point out that the question arises under section 22 (a) of the Internal Revenue Code, which broadly defines the gross income which is to be taxed to an individual as including "gains or profits and income derived from any source whatever." The revenue acts do not recognize partnerships as taxable entities separate and apart from the individual partners, but provide that "Individuals carrying on busi-

ness in partnership shall be liable for income tax only in their individual capacity." See sec. 181, I. R. C. And, since the partners are liable for tax in their individual capacity, the broad scope of section 22 (a) must be considered.

Here, as in the *Tower* case, and a line of cases which have followed in its path, two members of a family have undertaken to apportion their income among the members of the family group. In this case the arrangement purports to divide two tax units into four. The evidence fails to show that there was any intent that either one of the children would join with petitioners in "carrying on business in partnership" in the taxable years (sec. 181, I. R. C.) ; or that there was any real change in the control over the income by the petitioners. Section 22 (a) of the Internal Revenue Code is the cornerstone of the Supreme Court's decision in the *Tower* case. Petitioners fail to understand that they have the burden of proving that something less than their respective 50 per cent shares of the income of an established business is taxable to them under sections 22 (a) and 181, for they pass lightly over the matter of proving that bona fide gifts of interests were made, and of proving that their two children were, in fact, carrying on a business with them in partnership. They miss the force of the phrase which appears at least twice in the opinion in the *Tower* case, which they even quote, to wit, that the issue turns on whether the junior members of the family and the senior members of the family "really intended to carry on business in partnership" in the taxable years, because they do not perceive that the Supreme Court clearly stated what factors should be shown as a matter of proof of such intent. The Supreme Court observed that:

* * * A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, * * * or business, and when there is a community of interest in the profits and losses. * * * A husband and wife [parent and child] may, under certain circumstances, become partners for tax, as for other, purposes. If she [the wife or child] either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by * * * 26 U. S. C. A. Int. Rev. Code, pars. 181, 182.

The contention that the daughter, Betty, was a partner in the Union Manufacturing business is particularly without merit. There is no evidence that she desired to, or intended to, or did carry on the business enterprise in partnership with her parents in the taxable years. She was about seventeen years old in 1943; she had no capital of her own; and she performed no services in the business. There is no evidence of a completed transfer of an interest in the business to her such as would put in her complete dominion and control over an interest in the business and the earnings thereof, and such as would remove from the alleged donor (mother or father, whichever claims to have made

the gift—the record on this point being confused)· control over his or her purported interest and share of earnings. See *Edson* v. *Lucas*, 40 Fed. (2d) 398, and cases cited therein. The evidence with respect to the alleged gift to Betty is merely that if a gift were made to the son, it would be fair to make a like gift to the daughter. Whichever petitioner alleges to have made this gift intended that the interest should be retained in the business as well as the earnings, nothing to the contrary having been shown by competent evidence. We are unable to find that a bona fide gift was made to Betty of a present interest in the business. We sustain the respondent's determination that one-sixteenth of the earnings attributed to her is taxable to the alleged donor, either Anna or Morris Harris.

In support of their contention that the son, Albert, was a copartner with them in their business during 1943 and 1944, petitioners refer us to certain cases where it has been held, upon particular facts, that a father and son were copartners. The holdings in such cases do not provide these petitioners authority in support of their contention. Such cases are distinguishable on their particular facts. Also, *Weizer* v. *Commissioner*, 165 Fed. (2d) 172, is inapposite, the facts being quite different.

Albert had an ambition to go into his father's business. He had done various things about the plant and office, without pay, during vacations and after school prior to 1943. But none of his activities, considering his youthful age and consequent limitations, had been sufficiently substantial to have taken him into any substantial or important work in the business before 1943. Cf. *John G. Scherf, supra.* In 1943 and 1944 his absence, therefore, was not absence from a business activity in which he had previously rooted himself. Therefore, little weight can be given his casual activities at his father's "shop" as a school boy, and full weight must be accorded the fact that he rendered no services whatsoever during 1943 and 1944. See *M. M. Monroe, supra.*

Albert contributed no capital to the Union Manufacturing Co. business originating with himself. Furthermore, the evidence is not present to show that the purported gift to Albert of an interest in the business was a completed gift *in praesenti* which vested in him complete dominion and control over an interest in and earnings of the business. *Edson* v. *Lucas, supra.* There was no written partnership agreement. The alleged verbal agreement was a loose one. There is no evidence to show clearly that the usual terms of a partnership agreement were worked out so as to definitely establish the rights and duties of the son if he were to really carry on a business in partnership with his parents *during the taxable years.* The only inference which can be made from the record is that management of the business was to remain in Morris Harris, and that he was to continue to control the

business and the earnings, as far as his children might be concerned. Partnership books were not closed. There were only bookkeeping entries which served to provide the basis for allocating earnings to the young son, who was in school at first and later in the Army.

Upon consideration of all of the facts, we can not find that Albert was a bona fide copartner in the business in 1943 and 1944. Applying the rationale of the *Tower* case, we sustain respondent's determination. See *John G. Scherf, supra.*

The second question is whether state income taxes are deductible in computing victory tax net income.

Section 172 (a) of the 1942 Revenue Act enacted a new tax, called the victory tax, which was to be levied upon income in years beginning after December 31, 1942. Section 172 (a) of the 1942 Revenue Act added new provisions to the Internal Revenue Code, sections 450 to 456. These provisions of the Internal Revenue Code provided for the computation of the new tax without reference to chapter 1, income tax, of the Internal Revenue Code, except where the statutory provisions relating to the computation of net income for the income tax were specifically made to apply by cross-reference. That is to say, the computation of the income tax and the computation of the victory tax are separate, the first being covered by subchapters A, B, and C; and the second being covered by subchapter D. For example, section 21 of the Internal Revenue Code (subchapter B, part 1) defines "net income" for purposes of the income tax; and section 451 of the Internal Revenue Code (subchapter D, part 1) defines "victory tax net income." Also, the respective subchapters make specific provisions for the various types of deductions which are allowable in computing "net income" and "victory tax net income."

It must be kept in mind that all deductions are a matter of legislative grace. The question which is now raised by the petitioners under the victory tax net income provisions of the Internal Revenue Code must be considered upon the basis of the specific statutory provisions which allow deductions. Section 451 (a) (3) states what taxes may be deducted in computing "victory tax net income." The provision is as follows:

SEC. 451. VICTORY TAX NET INCOME.

    (a) DEFINITION.—

       *       *       *       *       *       *       *

    (3) TAXES.—Amounts allowable as a deduction by section 23 (c), to the extent such amounts are paid or incurred in connection with the carrying on of a trade or business, or in connection with property used in the trade or business, or in connection with property held for the production of income.

The subsection above quoted contains a limitation. First, there is cross-reference to section 23 (c) of the Internal Revenue Code, which relates to the deduction of taxes generally for the purpose of comput-

ing "net income." Under section 23 (c) there is the general provision that taxes paid or accrued within the taxable year are deductible, but the exceptions to the general rule are set forth. Income taxes paid to a state are not within the exceptions, and they are deductible in computing net income for the income tax.

However, the limitation contained in section 451 (a) (3) is that only those taxes which are deductible under section 23 (c) which "are paid or incurred in connection with the carrying on of a trade or business, or in connection with the property used in the trade or business, or in connection with property held for the production of income" may be deducted for the purpose of computing the victory tax net income.

It is our understanding that the California income tax is a personal income tax, which, like the Federal income tax, is imposed upon income derived from all sources. Petitioners do not cite any cases which give contrary construction of the California statute. We do not have the personal income tax returns of the petitioners in evidence—neither the state nor the Federal returns. It is assumed that most of the income of the petitioners which was reported for both state and Federal income tax was derived chiefly from the partnership business. Petitioners argue that the state income tax was a tax which was paid or incurred in connection with the carrying on of a business within the meaning of section 451 (a) (3) because the income which was taxed by the state was derived from a business.

The construction which the petitioners would have placed upon section 451 (a) (3) does not, in our opinion, give proper consideration to the wording of the pertinent section. The state income tax was not incurred "in connection with the carrying on of the business." Those words have a clear meaning, but, if it is necessary to undertake to clarify them, we think that the words mean a tax which is incurred as an incident to the carrying on of business in the sense that a business expense is incurred in carrying on a business; that is to say, something which must be paid in order to do business.

The specific question raised by petitioners is covered by a ruling of the Commissioner, I. T. 3644, which comes to the conclusion that "the personal income taxes imposed by the various states are not deductible in whole or in part in computing victory tax net income under section 451 (a) (3) of the Internal Revenue Code, *supra*." We think this ruling is correct and that the report of the Committee on Finance of the Senate, which accompanied the Revenue Bill of 1942, supports the Commissioner's ruling. See C. B. 1944, p. 373; Senate Report No. 1631, 77th Cong., 2d sess. (C. B. 1942–2, 504, 509).

Petitioners think that the ruling set forth in I. T. 3644 may be in conflict with another ruling of the Commissioner, I. T. 3829, C. B.

1946–2, p. 38. The latter ruling was made in connection with the deductions allowed for the purposes of computing adjusted gross income under section 22 (n) (1) of the Internal Revenue Code. That section relates to the income tax. We think that the ruling made under I. T. 3829 does not apply in making an interpretation of section 451 (a) (3), which relates to the computation of victory tax net income. It has been noted before that state income taxes are deductible for the purpose of computing the income tax, and the ruling in I. T. 3829 is consistent with the statutory allowance of deduction for state income tax. The crux of the matter is that the Congress did not see fit to permit deduction of state income taxes in the computation of the victory tax net income for the purpose of the victory tax.[1] We think that this is a complete answer to the petitioners' contention.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

---

[1] See Senate Report No. 1631, 77th Cong., 2d sess. (C. B. 1942–2, p. 509), where the following is stated:

"Since the victory tax does not allow any deduction for state income taxes your Commitee deemed it advisable to provide that the total income tax and victory tax should not exceed 90% of the taxpayer's net income * * *."