E. R. Goold v. Commissioner.
Goold v. Commissioner
Docket No. 15072.
United States Tax Court
1949 Tax Ct. Memo LEXIS 299; 8 T.C.M. (CCH) 2; T.C.M. (RIA) 49008; January 6, 1949
Lafayette J. Smallpage, Esq., Savings & Loan Bldg., Stockton, Calif., and Frank C. Scott, Esq., Box 1904, Stockton, Calif., for the petitioner. Leonard A. Marcussen, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income and victory tax for the calendar year 1943 in the amount of $18,632.28, set forth in the deficiency notice, plus *300 an increase of $1,100.61 claimed by respondent in an amendment to his answer, the total deficiency being in the sum of $19,732.89. Petitioner claims an overpayment of $217.37. The principal issue is whether petitioner's share in the net income of the partnership of R. Goold & Son was his community or separate income. This, in turn, depends upon whether the interest in the partnership was acquired by petitioner from his father, the other partner, by purchase, as petitioner contends, or by gift, as respondent urges. If the principal issue is decided in favor of respondent, two additional questions arise: 1. The amount of petitioner's distributive share of the partnership income attributable to his personal services, respondent allowing $5,000 therefor and considering the remainder as petitioner's separate income: 2. the propriety of respondent's action in refusing to change the amounts of personal exemption and of credit for dependents from that claimed by petitioner on his return, after the reallocation of the income. Four subordinate issues are also presented: 1. The amount, if any, of deductible traveling and entertainment expenses claimed by petitioner on his return in *301 the amount of $300; 2. the proper amount allowable as a deduction for personal income tax payable to the State of California, in computing Federal income tax liability; 3. the propriety of respondent's action in disallowing entirely for purposes of victory tax computation a deduction for the California personal income tax; 4. the amount of earned income credit to which petitioner is entitled. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found accordingly and are incorporated herein by reference. At all times material to this proceeding petitioner was a resident of Stockton, California, was married, and was the father of four minor children. One was born on June 29, 1943; the others were under eighteen years of age in 1943. His tax return for the year involved, prepared on a calendar year-accrual basis, was filed with the collector for the first district of California. He reported his income and deductions on the community property method. On January 2, 1943, petitioner and his father, R. Goold, entered into a partnership under the firm name of R. Goold & Son for the purpose of operating a business which petitioner's father *302 had theretofore conducted as a sole proprietorship. On that date the father executed a bill of sale, whereby it was sought to transfer to petitioner an undivided one-half interest in all of the former's business assets described in the document, as follows: A. Eddy Electric and Mechanical
Company. Assets valued at
$ 32,560.83
B. An undivided one-half interest in
the R. Goold and A. E. Downer
joint venture as shown upon
the book of accounts
51,496.04
C. An undivided one-half interest in
the R. Goold and F. R. Zinck
joint venture as shown upon
the book of accounts
10,115.09
D. An undivided one-half interest in
the R. Goold and A. R. Liner
joint venture as shown upon
the book of accounts
2,500.00
E. An undivided one-half interest in
the R. Goold and C. L. Wold
joint venture as shown upon
the book of accounts
25,000.00
F. An undivided one-half interest in
the "Marysville" Contract as
shown upon the book of ac-
counts
40,000.00
Total
$161,671.96
The property so described was owned prior to the transfer by petitioner's father and mother as their community property. In addition, they owned other community property of a value in excess of $83,000. *303 They were the parents of another child, a daughter, who was two years older than petitioner. The recited consideration for the transfer of the one-half interest was the execution and delivery by petitioner of a non-interest bearing note in the amount of $100,000, payable at the rate of "twenty-five (25%) percent or more of the annual profits which shall be made to and received by me out of the operation of said business." At the time of this transaction with his father, petitioner owned a small home, an automobile, and four shares of stock of the Union Oil Co. Item A of the bill of sale represented the value of the assets of the Eddy Co., which was engaged in the business of the installation of wiring systems and the sale of electrical materials, supplies, and appliances. Items B to F, inclusive, consisted of the known and estimated share of the profits of petitioner's father in certain joint ventures for the performance of various Government contracts in the general area of Stockton, California. Petitioner's father received his share of the profits in each of the joint ventures primarily for undertaking the responsibility of financing them in whole or in part. Such financing *304 as was necessary had been arranged and completed by petitioner's father prior to January, 1943. The accounting and handling of money for the joint ventures was done in the office of petitioner's father in order to safeguard his interests in connection with their financing. The documents incident to the January, 1943, transaction were drafted and the terms and confitions determined by Lafayette J. Smallpage, an attorney, by whom, together with Frank Scott, an accountant, the entire arrangement was devised, after consultation with petitioner's father. The attorney determined that the face amount of the note should be in the sum of $100,000, that no interest should be payable, and that the manner of repayment should be as recited in the note. The note contained the following endorsements on the back, all being in the handwriting of the attorney except those for 1944 and 1945, which were in the handwriting of the accountant: 12/25/43
Gift
$ 3,000.00
12/31/43
Credit by Error made in
Computation of Value of
Interest Sold
50,000.00
Changed per authority of
Smallpage 1/17/47
29,259.00
12/25/44
By gift
3,000.00
12/25/45
By gift
18,000.00
1/25/47
Earnings for 1945
7,107.42
*305 At the time of the execution of the note and the bill of sale it was understood between petitioner and his father that items E and F on the bill of sale, totaling $65,000, were round figures representing an estimate of the father's share of the profits in the so-called Wold joint ventures, and that the figure would be subject to adjustment when the profits were known, with a corresponding adjustment to be made on petitioner's note. The corrected figure was determined to be $44,810.04, which involved a decrease of $20,189.96, one-half of which in the amount of $10,094.98 was included in the adjustments endorsed upon the note on January 17, 1947. That endorsement was in the sum of $29,259. Both petitioner and his father were unfamiliar with the purpose and reasons for the various endorsements except that they did recognize that part of one endorsement was for the purpose of making the downward adjustment for profits from the Wold joint venture. At the time of the transaction and for some years prior thereto, petitioner's father was not in good health and desired to bring petitioner into the business. This matter had been the subject of discussions for some time between petitioner *306 and his parents and between his father and his mother. It was planned that petitioner would first work in the business as an employee for a few years in order to determine whether he could undertake the responsibilities incident to partnership. Upon the establishment of his worth as an employee, his father then intended to offer him a partnership interest, which he did in 1943. The primary reason for having petitioner execute the note at the time of the creation of the partnership was to fulfill his father's wish to deal fairly and equitably with both petitioner and his sister, in so far as their distributive shares in their father's estate were concerned. It was intended that the balance remaining due on the note, together with adjustments for gifts made by the father, was to be deducted from petitioner's share in his father's estate in order to equalize the interest that petitioner and his sister would receive upon their father's death. Petitioner's share of the partnership business was not acquired by purchase. During 1943 petitioner received from the partnership a drawing account of $200 per week, which represented a partial distribution of profits. He received no other profit *307 distributions from the business in that year. Petitioner is a graduate of the College of the Pacific, by which he was awarded a Bachelor of Arts degree in 1934. Following his graduation and for two years thereafter he worked at various service stations, part of the time as an employee and part of the time in business for himself. His earnings during this period averaged about $150 per month. From 1936 to 1940 he was employed by the Union Oil Co., earning at the termination of this employment $165 per month. In 1940 petitioner commenced working for his father at the Eddy Co. In that year, his father purchased the interest of the other partner, thereby creating an opportunity for petitioner to join the business. Although not an electrician, petitioner familiarized himself with the details of the business and gradually assumed general responsibility for its operations. At those periods when his father was away because of illness, petitioner alone ran the business. He first received a salary of $40 weekly which was later increased to $50 weekly. In 1941 he received some instruction from Downer on the methods and problems incident to the laying of sewers, and in 1942 was employed by the *308 Goold & Downer joint venture at a salary of $150 weekly to assist in that type of work. Such compensation was in addition to his salary from the Eddy Co.
During the taxable year petitioner devoted all of his time to partnership business. His activities consisted principally of the supervision of the electrical house-wiring work of the Eddy Co., and the supervision of workers and the general management of some of the joint-venture activities. From 1942 to 1944 the partnership handled between six and seven million dollars worth of business. Petitioner was generally familiar with substantially all of the undertakings and participated in most of them. The reasonable value of petitioner's personal services to the partnership in 1943 was $10,000, which is also a reasonable allowance as compensation for such personal services as he rendered to the business. On his 1943 tax return petitioner reported total income for income tax purposes of $30,779.97, of which $30,258.37 was said to represent income from the partnership. He received salary and wages of $683.10 during the year and reported one-half thereof on his return. On his 1943 tax return, petitioner claimed $512.50 of the total *309 exemption of $1,200 allowable for husband and wife. He also claimed a credit of $700 for dependents, listing two daughters as dependents. Respondent has allowed these amounts in the deficiency notice. He claimed as a deduction on the return $300 for entertainment and traveling expenses, representing his one-half of a total claimed expenditure of $600, alleged to have been incurred in partnership business. A portion of the deduction was said to cover expenses incurred for luncheons and dinners for inspectors and Government officials, interested in the various projects being constructed under the joint venture agreements. The remainder was to cover cost of gas and oil for trips made by petitioner in his personal car. On many trips a company car was used, and at all times gas and oil was available for company business at the company pumps, which petitioner used in his personal car. Petitioner kept no records of any of these expenditures, and the amount deducted was estimated by the accountants. There was no agreement between petitioner and his father as to the method of handling expenses incurred in the partnership business, and he did not seek reimbursement from the partnership, *310 althought some portion may have been reimbursed by the partnership. On his 1943 return, petitioner also claimed a deduction for personal income tax payable to the State of California in the amount of $690.58 in computing income tax net income, and $688.45 in computing victory tax net income. In his notice of deficiency, respondent allowed a deduction in the amount of $2,219.21 in the computation of income tax net income, but allowed no deduction for the item in the computation of victory tax net income. On or about October 24, 1947, the office of the Franchise Tax Commissioner of the State of California sent petitioner a formal notice of additional personal income tax proposed to be assessed, showing a proposed additional assessment in the amount of $1,484.51. Petitioner duly filed with the Franchise Tax Commissioner a protest against the proposed additional assessment, contesting his liability for payment thereof. Petitioner has not paid the proposed additional assessment and continues to contest his liability for the same. On his tax return petitioner claimed an earned income credit of $590.65. In the deficiency notice respondent allowed the minimum earned income credit of *311 $300. This minimum allowance resulted because of respondent's determination that the reasonable value of petitioner's services to the partnership was only $5,000. Opinion KERN, Judge: In transactions between closely-related members of a family where tax liability is sought thereby to be affected "the statements, acts, and circumstances must all be considered and subjected to special scrutiny", James L. Robertson, 20 B.T.A. 112, 114. The mere self-serving statements of interested parties are not controlling as to the realities of the transaction. Frank J. Lorenz, 3 T.C. 746, 751; affirmed, 148 Fed. (2d) 527. The first issue in this proceeding, involving the question of whether petitioner acquired the one-half interest in his father's business assets by purchase or by gift, presents such a situation, and must be determined on all of the facts and circumstances shown by the record and not merely on the statements of petitioner and his father. Petitioner argues that the transaction is accurately portrayed by the formal instruments executed incident *312 thereto, such as the execution of the bill of sale and the note. Respondent urges that the principle underlying Gregory v. Helvering, 293 U.S. 465, calling for a realistic approach to tax problems, by viewing actual substance and not mere form, must lead to the conclusion that the acquisition was in reality by gift and not by purchase. We believe that petitioner has not overcome the presumptive correctness of respondent's determination, and that the record, in fact, supports respondent's position. The facts incident to the transaction will not warrant a conclusion that the arrangements between petitioner and his father constituted a bona fide sale. The transaction does not appear to be one "that parties dealing at arm's length would have formulated." Granberg Equipment, Incorporated, 11 T.C. No. 85 (October 28, 1948). Such factors as the absence of interest, the vague and unexplained endorsements on the note, and the failure to make any payments on the note in the first few years, the only substantial offsets being in the form of gifts, undermine the result petitioner wishes us to reach. Even the testimony of the interested parties fails to persuade *313 us that form should prevail. The whole program was designed by an attorney and by an accountant, and neither petitioner nor his father in testifying at the hearing herein could unravel many of the important details of the arrangement. None of the endorsements upon the note was made by them and none could be adequately identified. Perhaps the best explanation of the transaction can be inferred from the testimony of petitioner himself. His father did not wish to prefer him over his sister in the ultimate distribution of the father's estate. While the transfer of the interest in the business was in reality a gift to the son in the nature of an advancement of an inheritance or legacy, a note was executed by the son, which was not intended by the parties to be evidence of a presently-enforceable debt arising out of a business transaction, but to be evidence of an advancement and which would serve as a means of equalizing, as between petitioner and his sister, the share of the father's estate which he would receive upon the latter's death. Since it is our judgment that petitioner did not in reality acquire the interest in the business by purchase, but rather by gift, it accordingly follows *314 that his interest was his separate property, and that the income therefrom was his separate income, except as to such part as is properly attributable to his own personal services. Cal. Civ. Code, Sections 163, 164, 687. Respondent determined that the value of petitioner's personal services was $5,000, and that only that amount constituted community income. Petitioner contends that respondent erred in asserting the value of his services to be only $5,000. He contends further that additional error was committed in not determining that all of the income was community income except for a small allowance for interest on petitioner's investment, as was done in Lawrence Oliver, 4 T.C. 684, and in Ashley Manning, 8 T.C. 537, or in the alternative, in not applying the formula discussed in G.C.M. 9825, (1931), C.B. X-2, p. 146. We believe that petitioner has convincingly shown that the reasonable value of his personal services was $10,000, and we have found that to be the fact. Although we have concluded that respondent erred in his determination as to the amount of the value of petitioner's personal services, we cannot agree with petitioner that *315 respondent committed error in the manner of the allocation of petitioner's income as between community and separate income. Substantially all of the profits of the enterprise resulted from the skill, judgment, and business acumen of petitioner's father and the use of his credit and capital. In this crucial respect the present proceeding is unlike such cases as Lawrence Oliver, Ashley Manning, both supra, and Estate of Clarence B. Eaton, 10 T.C. 869. They are cases where "the management, activities, and skill of petitioner constituted the principal contribution to the earnings of the business." Lawrence Oliver, supra, 688-689. The allowance of $10,000 which we have found from the record to be reasonable compensation for petitioner's services and which petitioner and his father themselves considered apparently to be reasonable compensation for such service, in our opinion, adequately encompasses as remuneration the totality of petitioner's contribution to the operations of thebusiness. In view of this finding we would not be warranted to resort to any formula for the purpose of determining what part of petitioner's income from the business represented community *316 income and what part represented a return from capital and therefore separate income. Moreover, there is an absence of proof in petitioner's presentation as to the fair rate of return upon a capital investment in the type of business here before us which is an important element in such a formula, and in the application of the concept of such cases as Lawrence Oliver, supra.Recognizing this defect, petitioner, upon brief, requests that we take judicial notice of what the proper interest rate should be. This we are not permitted to do, even if we were aware of the rate. Cf. Chesapeake and Virginian Coal Co., 13 B.T.A. 323. Our disposition of these two questions requires a consideration of one other alternative point made by petitioner, namely, that because of the reallocation of income compelled by our result, there should be adjustments upward made in the amount of personal exemption and dependency credits claimed by petitioner on his return. [1] We cannot now disturb the division made between petitioner and his wife, as petitioner's wife is not before us in this proceeding, and no avenue is now open whereby such adjustment can be made. A. L. Lusthaus, 3 T.C. 540, 543; *317 affirmed, 149 Fed. (2d) 232, 327 U.S. 293. There still remains for consideration four additional issues. The first involves the deduction of $300 for traveling and entertainment expenses. Aside from the absence of any evidence as to what, if any, amounts were expended for these purposes and aside from the fact that petitioner testified that he may have been reimbursed for some or all of these alleged expenditures, petitioner cannot succeed for the additional reason that if any expenditures were so made, they were partnership expenses; as such they were proper deductions in the partnership return. Hiram C. Wilson, 17 B.T.A. 976. Respondent's determination in this issue is sustained. Secondly, we are confronted with the question of the proper allowance for accrued California personal income tax of petitioner for Federal income tax purposes. On his return, petitioner claimed the amount of $690.58. In the notice of deficiency, respondent allowed an increased deduction *318 for the California tax on the basis of the estimated amount petitioner would be required to pay. After the state taxing authorities proposed an additional assessment of personal income tax in the amount of $1,484.31, petitioner filed a protest with them, contesting his liability therefor. He has not paid the additional tax, nor has he withdrawn his protest. He continues to contest his liability. Because of the contest, both as to liability and amount, petitioner, even though on the accrual basis, is precluded from claiming as a deduction any greater amount than that taken by him on his return. Security Flour Mills Co. v. Commissioner, 321 U.S. 281; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516. Petitioner seeks to insulate himself from the rule of these cases by contending that the issues raised by the state authorities are the same as those presented to us, and that the state authorities have expressed their willingness to rely upon our decision in the determination of the additional state tax assessment. We fail to see that petitioner by this argument has made any meritorious distinction, and respondent must be sustained on this issue. The *319 third issue is whether the state income taxes are deductible in computing victory tax net income, pursuant to Section 451 of the Code. [2] Petitioner concedes that the que tion has been decided adversely to him in Anna Harris, 10 T.C. 818, but urges that we overrule that decision. We have carefully considered his argument. We believe, however, that the Harris case was correctly decided and is dispositive of this issue in respondent's favor. Lastly, we must decide the problem of the earned income credit allowable to petitioner, which the parties urge may require a consideration of the proper method of computing that credit, under section 25(a) (3) and (4) of the Code. [3]
*320 Although the parties argue over the procedure to be followed in applying the limitations contained in Section 25(a)(4)(A), where income is derived from a business, in which both personal services and capital are material factors, and the community method of reporting income and deductions is employed by the taxpayer and his spouse, we are not called upon to resolve that problem. Our factual determination that a reasonable allowance as compensation for petitioner's personal services rendered to the partnership was $10,000, and, as such, was community income, gives the parties the additional data necessary to compute the amount earned income credit to which petitioner is entitled, without necessity of applying the limitation provisions of section 25(a)(4)(A). This can be computed under Rule 50. Decision will be entered under Rule 50. Footnotes
1. Petitioner and his wife filed separate returns for the taxable year in which they divided as between themselves the personal exemption and credits for dependents allowed by law.↩
2. SEC. 451. VICTORY TAX NET INCOME. (a) Definition. - * * *
(3) Taxes. - Amounts allowable as a deduction by section 23 (c), to the extent such amounts are paid or incurred in connection with the carrying on of a trade or business, or in connection with property used in the trade or business, or in connection with property held for the production of income.↩
3. SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME. (a) Credits for Normal Tax Only. - There shall be allowed for the purpose of the normal tax, but not for the surtax, the following credits against the net income: * * *
(3) Earned Income Credit. - 10 per centum of the amount of the earned net income, but not in excess of 10 per centum of the amount of the net income. (4) Earned Income Definitions. - For the purposes of this section - (A) "Earned income" means wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered, but does not include any amount not included in gross income, nor that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income producing factors, a reasonable allowance as compensation for the personal services actually rendered by the taxpayer, not in excess of 20 per centum of his share of the net profits of such trade or business, shall be considered as earned income.↩